## WILSON v. UNITED STATES.
### No. 11584.

Circuit Court of Appeals, Fifth Circuit.
Jan. 2, 1947.

Rehearing Denied Feb. 3, 1947.
Writ of Certiorari Deneid April 7, 1947.

G. Ernest Jones and Ira E. Tidwell, both of Birmingham, Ala., for appellant.

John D. Hill, U. S. Atty., Gorman R. Jones, Jr., and Osce M. Bentley, Asst. U. S. Attys., all of Birmingham, Ala., for appellee.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

Upon a trial by jury, appellant was found guilty of embezzlement of money belonging to the United States, in violation of Section 100, Title 18, of the United States Code Annotated. Two points are raised on this appeal: first, the sufficiency of the evidence to support the verdict; second, the failure of the indictment to allege that the money embezzled was the property of the United States.

The indictment was in four counts, and each dealt with the sale of a different bond, the proceeds of which were embezzled. The jury found the defendant guilty on all four counts. He testified in his own behalf and denied his guilt, but he admitted that he received, endorsed, and cashed the checks given by the four purchasers of the bonds described in the indictment, the sales of which were not reported by him.

The funds in question were paid to appellant while he was acting for the Rheem Manufacturing Company in relation to its activities as an issuing agent of the United States for the sale of War Savings Bonds, Series E. Wilson was the office manager of the Company with complete charge of its cash sales of said bonds. He was the sole custodian of the bond stock and of the proceeds of the sale of the bonds, when is-

sued to the original purchasers thereof. He was authorized to requisition blank bonds, to issue and deliver them to purchasers, to receive the proceeds of sales thereof, and to account for the same to the United States through the Federal Reserve Bank of Atlanta.

As office manager and representative of the issuing agent, Wilson had pads from which the bonds were issued. They consisted of the original bonds and two copies, one white and one pink. The white and pink forms became carbon copies of the original bonds. The pink copies, which were usually signed as receipts by the purchasers, were retained by the issuing agent. The white copies were required to be returned to the Bank as records of bonds that had been sold.

Although the shortage in the bond account amounted to the cost of bonds of the face value of seventy-one hundred dollars, the bonds described in the respective counts of the indictment were as follows:

Count 1. Fifty Dollar Bond, No. L 125–553–196 E, sold and delivered to Herbert H. Henry, Jr., on May 31, 1945;

Count 2. One Hundred Dollar Bond, No. C–102–954–538 E, sold and delivered to John W. Thornton on June 9, 1945;

Count 3. One Hundred Dollar Bond, No. C–102–954–585 E, sold and delivered to Mrs. Enzo M. Gandy on June 8, 1945;

Count 4. Five Hundred Dollar Bond, No. D 12–252–987 E, sold and delivered to Mrs. Mardie B. Meacham on May 31, 1945.

Wilson's secretary testified that the reports of sales of bonds were prepared by direction of Wilson himself. He furnished the white copies, or stubs, of the bonds from which she made the reports. The method of making the cash sales was devised by him. The method of handling the money was directed by him. The cash obtained from these bonds was turned over to him and was not commingled with other funds. The bonds described in counts one and four of the indictment were sold on May 31, 1945. He failed altogether to report these sales to the Federal Reserve Bank in his reports of June 8, 1945, June 20, 1945, June 28, 1945, July 5, 1945, and July 7, 1945. In addition, the white copies thereof had disappeared, though he had control of them. The bonds described in counts two and three were sold on June 9 and 8, respectively. He failed to include either of these sales in his four reports subsequently made in June and July as above stated. In these instances also the white copies had disappeared, though he had control of them.

The jury evidently believed the testimony of appellant's secretary that she did not steal the money or destroy the white stubs. It was a question for the jury whether to believe Wilson or the witnesses in the case whose testimony incriminated him. Issuing agents were required to make periodic statements of account to the Federal Reserve Bank. These reports contained the serial numbers of the bonds sold, the amount of unissued stock on hand, and other information; they were accompanied by white copies of the bonds listed as having been sold, together with a remittance to cover the cash amount due. From all of the evidence in the case, the jury was warranted in returning a verdict of guilty as charged on each count, any one of which is sufficient to support the judgment.

The most serious question on this appeal is whether the indictment is so defective in substance as to be unable to withstand an attack upon it after verdict. There was no demurrer to the indictment, no motion to quash it, and no motion in arrest of judgment; but there was a motion for acquittal at the conclusion of the evidence for the prosecution, which was directed to the insufficiency of the proof and not to defects in the indictment. In none of the counts of the indictment was there an express allegation that the funds embezzled were the property of the United States, though it was alleged that the defendant was authorized to sell and did sell the bonds, describing them by serial numbers, and that he received therefor the purchase price in a certain sum, which he embezzled.

■ There are two federal statutes that bear upon the issues before us; one is

directed to trial courts,[1] the other to appellate courts.[2] We are concerned primarily with the latter, which requires the reviewing court to disregard any error of the trial court that, regardless of its tendency, caused no prejudice to the substantial rights of the accused. Both are remedial statutes and should be liberally construed, subject to the provision of the Sixth Amendment that the accused be informed of the nature and cause of the accusation.[3] We are also concerned with jurisdictional requirements, because the court below did not have jurisdiction of the offense unless it appeared of record that the money embezzled was the property of the United States.

Recurring to the indictment to ascertain whether the accused was thereby informed that the money embezzled was the property of the United States, we find it specifically alleged that the defendant was an employee of the Rheem Manufacturing Company, and as such employee had been officially authorized to sell U.S. War Savings Bonds; that he sold certain bonds to named individuals and received from them stated sums, lawful money of the United States. The averments of each count then continue, mutatis mutandis, as follows: "* * * and immediately upon the sale by the Defendant to the said Herbert H. Henry, Jr., and the delivery of the bond to him, which was done on, to-wit, May 31, 1945, by the Defendant, it then and there became the duty of the Defendant to account to and pay over to the United States through the Federal Reserve Bank of Atlanta, Birmingham Branch, the said sum of $37.50; that instead of so doing, that is, instead of paying over to said bank said money then and there lawfully possessed by the Defendant and lawfully in his custody, he converted the same to his own use and thereby embezzled the same; contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States."

■■ It was unnecessary to allege that the bonds were the property of the United States before they were issued. It was the money and not the bonds that the appellant was charged with embezzling. He was authorized to issue the bonds and accept the price in cash. The United States was borrowing money on its credit. The defendant, in delivering the bonds to the original purchasers thereof, was completing the execution of the loan. Having alleged that the defendant was the issuing agent for the United States, that he sold the bonds, received the money, and then and there had it in his lawful custody, which it was his duty to pay over to the United States, it was unnecessary to allege that the money was the property of the United States in order fully to inform the defendant of the nature of the charge against him.

■ In one respect the indictment was stronger than the proof, but if this amounted to a variance it was cured by the verdict. The indictment alleged that the defendant as such employee was officially certified as an issuing agent for the sale of U. S. War Savings Bonds and authorized on behalf of the Federal Reserve Bank to sell said bonds. This was not strictly accurate, though the legal effect of the proven facts was the same as alleged. The Federal Reserve Bank of Atlanta was the fiscal agent of the United States. It designated the Rheem Manufacturing Company as issuing agent for the sale of War Savings Bonds, Series E, upon the following conditions: "The entire unissued stock of War Savings Bonds, Series E, hereafter at any time or from time to time obtained, until sold, and the proceeds thereof, when sold, shall at all times be the property of the United States and are to be held in trust for it. The undersigned shall be responsible for all acts of its own officers and employees in the custody, issue, and sale of said bonds and shall be required to use the same care in the safekeeping of said bonds and the proceeds thereof as it uses in the case of its own securities and funds. If bonds are lost or stolen, the undersigned shall immediately notify the Federal Reserve Bank of the district. All War Savings Bonds, Series E, are to be

---

[1] 18 U.C.C.A. § 556.
[2] 28 U.S.C.A. § 391.

[3] Sutton v. United States, 5 Cir., 157 F.2d 661.

sold and issued pursuant to the provisions of Treasury Department Circular No. 653, revised, and the proceeds therefrom are to be remitted in accordance with the provisions of Treasury Department Circular No. 657, as amended, or instructions issued from time to time by the Federal Reserve Bank of the district."

The Federal Reserve Bank authorized the Rheem Manufacturing Company, as issuing agent, to appoint an agent or agents to act for it, and furnished blank forms for the Bank to be advised of the signatures of the persons appointed. The Manufacturing Company authorized R. C. Eichler and the defendant to sign requisitions for bond stock and other correspondence relating to its activity as issuing agent of War Savings Bonds, Series E. They were the only persons who were authorized to sign such requisitions and correspondence. The evidence shows that no requisition or reports were made by Eichler. He was Wilson's immediate superior, and turned over to Wilson the entire duties and responsibilities of the Company in relation to the cash sales of said bonds. Since the Manufacturing Company was a corporation, it could act only through agents, and it constituted Wilson its agent to perform the duties of the corporation in relation to its activity above mentioned. Therefore, in the sale of these bonds for cash, Wilson was the alter ego of the corporation; he acted as such with the knowledge and consent of the duly authorized officers of the United States.

 As a recognized sub-agent of the Federal Reserve Bank, the appellant held the entire unissued stock of War Savings Bonds, Series E, in his hands, under the express agreement that said bonds, and the proceeds thereof when sold, should at all times be the property of the United States and were to be held in trust for it. It was not necessary for the indictment to allege these matters in detail. The rule is that things should be pleaded according to their legal effect. It was, therefore, proper to allege that the defendant was acting as the issuing agent of the United States in the sale of the bonds. The pleader stated every material fact necessary to inform the defendant with reasonable certainty of the nature and cause of the accusation against him, and to enable him by a plea of former jeopardy to be protected against another prosecution for the same offense. Nothing more is required in an indictment after verdict or when it is attacked for the first time on appeal.

 Under federal decisions, the general rule is that every essential element of the offense must be alleged in the indictment.[4] It is not necessary to plead that which is mere matter of evidence. Ownership in the United States of the money embezzled was an essential element of the offense, and good pleading required that it be alleged in positive form and not inferentially, argumentatively, or by way of recital; but the failure so to plead it was cured by the verdict, because the essential facts constituting the offense were positively alleged in the indictment and from them it appeared, as a matter of law, that the money embezzled was the property of the United States and was held in trust for it. The essential facts were that the defendant acted as the authorized agent of the United States in issuing the bonds described in the indictment, in selling the same to the original purchasers, and in the receipt of the money; and that, instead of paying the same to the United States through the Federal Reserve Bank, he appropriated it to his own use, thereby embezzling it.

We find no reversible error in the record, and the judgment appealed from is affirmed.

---

4 Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314; Norris v. United States, 5 Cir., 152 F.2d 808, 810.