## WILLIAMS v. UNITED STATES.
### No. 12027.

Circuit Court of Appeals, Fifth Circuit.
Nov. 18, 1947.

---

McCORD, Circuit Judge, dissenting.

———◇———

Hollis Fort, Hollis Fort, Jr., and John A. Fort, all of Americus, Ga., for appellant.

John P. Cowart, U. S. Atty., and T. Reese Watkins, Asst. U. S. Atty., both of Macon, Ga., for appellee.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellant was put to trial on June 12 on an information in eighteen counts undertaking to charge violation of sugar rationing regulations. A copy of the information was first received by defense counsel on June 5. The Court denied the following motions: (1) Motion for continuance; (2) motion to dismiss the information; (3) motion for bill of particulars; and (4) motion to direct a verdict of acquittal as to all counts.

The Court directed a verdict, however, on Counts 9, 12, 14, 16, and 17, and the jury acquitted defendant on Counts 11, 13, and 15, but found him guilty on all other counts.

The indictment in Count 1 is that the defendant "did then and there acquire, use, permit the use of, transfer, possess, and control divers and sundry ration docu- ments, to-wit: about 911 sugar ration stamps, which aforesaid ration documents had not been issued to and acquired by the said defendant John T. Williams, in ac- cordance with a ration order."

The second and third counts are identical except as to the dates and the numbers of sugar ration stamps.

Count 4 charges that the defendant "then and there being registered as an industrial user of sugar under and pursuant to the provisions of Third Revised Ration Order 3, as amended, of the Office of Price Administration and subject thereto, willfully, knowingly, and unlawfully did possess, use, permit the use of, sell and otherwise transfer about 1,000 pounds of sugar, a rationed commodity, acquired by the said defendant in exchange for divers and sundry ration documents, namely, sugar ration stamps, in violation of the provisions of Third Revised Ration Order 3, as amended, of the Office of Price Administration."

The fifth count charges that on "divers days during the months of February, March, and April, 1946," the defendant, "then and there being registered as an individual user of sugar under and pursuant to the provisions of Third Revised Ration Order 3, as amended, of the Office of Price Administration and subject thereto, willfully, knowingly, and unlawfully did' possess, use, permit the use of, sell and otherwise transfer about 4,000 pounds of sugar, a rationed commodity, each and every week during said period, acquired by the said defendant in exchange for divers and sundry ration documents, namely, sugar ration stamps, in violation of the provisions of Third Revised Ration Order 3, as amended, of the Office of Price Administration."

The sixth and seventh counts are identical except as to the periods of time and the amounts of sugar.

 No good purpose will be served by describing each of the remaining counts in the indictment. It is sufficient to say they are all of the same vagueness and lack of factual allegations as are those heretofore described. In the light of the decision of this Court in Sutton v. United

States, 157 F.2d 661, we think that the defendant was entitled to a bill of particulars.

We realize that ordinarily the granting or refusal of a bill of particulars rests within the sound discretion of the trial Court, but it has no discretion to disregard the requirements of the Sixth Amendment that the accused shall be informed of the nature and cause of the accusations against him fully enough to enable him to prepare his defense and definite and certain enough that he may be protected by a plea of former jeopardy against another prosecution for the same offense. In view of the very short time between the filing of the information and the bringing of the case on for trial, the large number of counts in the information, the vague and general terms in each count thereof, the unfamiliarity of the bar with ration orders, rules, and regulations, the rapidity with which such rules and regulations were amended and changed, we think that it was a reversible error to refuse the defendant's motion for a bill of particulars even though the Court was without error in overruling the motion to dismiss or to continue the case.

Reversed and remanded for further proceedings not inconsistent with the views herein expressed.

McCORD, Circuit Judge (dissenting).

I do not agree with the majority opinion wherein it finds the trial court abused its discretion in refusing to grant the motion of defendant for a bill of particulars.

The defendant was arrested on May 8, 1947, on a warrant describing the offense. He was immediately brought before the United States Commissioner, and being there represented by counsel, waived hearing. On June 5, 1947, through his counsel, he was furnished a copy of the information setting forth the charges against him, as well as the regulations he was alleged to have violated. The case was called for trial and was tried on June 12, 1947, and counsel at that time admitted in open court that he had received the information and a copy of the regulations on June 5, 1947. At one and the same time counsel for defendant submitted to the court motions for continuance, for dismissal of the case, and for a bill of particulars. Defendant was not taken by surprise, as his counsel appeared armed with every available defensive pleading.

The evidence virtually warrants the giving of a directed verdict for the United States. It discloses that the defendant had for a long time been engaged in buying and selling sugar in violation of the Ration Orders of the Office of Price Administration, until his black market dealings mounted into thousands of pounds of sugar, and stood out like the smudge of a black snake crossing a sandlot.

The evidence further shows without dispute that officers on several occasions went to a grocery and feed store in Cordele, Georgia, and secreted themselves behind boxes, watching the defendant as he came in and traded "ration stamps," or what was known as "housewife stamps," for sugar. On one occasion the defendant entered this store while the officers were watching and delivered to the storekeeper a magazine containing 911 "housewife stamps," which were in gummed sheets and had not been separated, and paid him $1302 in cash for nearly five thousand pounds of sugar, saying he would send for the sugar the next day. The officers marked the bags of sugar with the letter "X." At a later date they marked approximately one hundred bags of sugar with a "check mark," and still later, they marked sugar bags at this store, which the defendant had purchased, with the letter "O." The officers followed a truck, after it had loaded the sugar at the store in Cordele, Georgia, to the home of the defendant, at 1223 Lee Street, Americus, Georgia, and watched the sugar unloaded into a garage in the back yard. After watching several loads of sugar, which defendant had bought and paid for with "housewife stamps" in Cordele, Georgia, unloaded into this garage in defendant's back yard, the officers, armed with a search warrant, raided the garage and found over two hundred and forty one, one hundred pound sacks, of sugar, weighing in all over twenty-four thousand pounds. Many of the sacks were marked with the letter "X," with a "check mark," and with the letter "O." Some of the sacks, marked as indicated, were exhibited to the jury at the trial. This evidence

leads unalterably to the conclusion that the defendant did not need a bill of particulars. It discloses that he knew accurately, both as to time and place, of the charges he must face.

Finding sugar concealed on the premises of defendant was almost akin to the possession of the recently stolen goods rule: Where one is found in possession of recently stolen goods, such possession casts upon that one the burden of explaining such possession, and failing so to do, a jury may conclude guilt therefrom. I readily concede that the defendant did not have to testify in his own behalf. He had the constitutional right to refuse, as he did, to offer testimony. Yet he sat silently by at his trial and refused to testify when the evidence was without dispute that he was and had been engaged in buying, concealing, and selling sugar illegally.

The defendant ran a small bottling plant, and he was allowed only certain amounts of sugar, which were issued to him in the form of a sugar check, deposited in the bank to his account, and on which he could issue checks for the purchase of sugar. He purchased approximately ninety per cent of his sugar on "housewife stamps," which was unlawful, and this he knew better than any one else. Moreover, I can find nothing vague or uncertain in the counts of the information, and here set one out, by way of showing that they are clear and informative.[1]

The case of Sutton v. United States, on which the majority relies, is not in conflict with this case.

The great weight of authority and the evidence as found in this record shows conclusively that the defendant here was not taken by surprise. Wilson v. United States, 5 Cir., 158 F.2d 659; Hart v. United States, 5 Cir., 112 F.2d 128; Chadwick v. United States, 5 Cir., 117 F.2d 902; Beland v. United States, 5 Cir., 100 F.2d 289.

The very learned trial judge gave a fair and full charge and read to the jury the Ration Order on which the defendant was being tried. The defendant was not taken by surprise, and the evidence leads unerringly to his guilt. I cannot bring myself to agree with my brothers and I, therefore, respectfully dissent.

---

[1] " * * * On divers days during the months of April and May, 1946, at Cordele, Georgia, in the Americus Division of the Middle District of Georgia the defendant John T. Williams, alias J. T. Williams, alias Buck Williams, then and there being registered as an industrial user of sugar under and pursuant to the provisions of Third Revised Ration Order 3, as amended, of the Office of Price Administration and subject thereto, willfully, knowingly, and unlawfully did possess, use, permit the use of, sell and otherwise transfer about 10,000 to 15,000 pounds of sugar, a rationed commodity, each and every week during said period, acquired by the said defendant in exchange for divers and sundry ration documents, namely sugar ration stamps, in violation of the provisions of Third Revised Ration Order 3, as amended, of the Office of Price Administration."