UNITED STATES of America

v.

MAINE LOBSTERMEN'S ASSOCIA-
TION and Leslie Dyer.

Crim. A. No. 57–35.

United States District Court
D. Maine, S. D.

Dec. 20, 1957.

Peter Mills, U. S. Atty., Portland, Me.,
John J. Galgay, Hartsdale, N. Y., and

Alan L. Lewis and Philip Bloom, Anti-Trust Division, Dept. of Justice, New York City, for plaintiff.

Stanley R. Tupper, Augusta, Me., Philip F. Chapman, Jr., Portland, Me., A. Alan Grossman, John L. Knight, Rockland, Me., for defendants.

GIGNOUX, District Judge.

On October 15, 1957, an indictment was returned in the United States District Court for the District of Maine, charging the Maine Lobstermen's Association, and Leslie Dyer, its president, with a violation of Section 1 of the Sherman Act (26 Stat. 209, 15 U.S.C.A. § 1). The indictment alleged that the defendants combined and conspired with each other, and others, to fix and establish a minimum selling price for live Maine lobsters sold to lobster dealers; to refrain from catching lobsters until such minimum price was obtained; and to induce and compel all Maine lobstermen, including non-members of the defendant Association, to adhere to the terms of the conspiracy charged, all in unreasonable restraint of the interstate trade and commerce in live Maine lobsters.

On October 25, 1957, the defendants filed five motions and a document entitled "Interrogatories," as follows:

1. Motion to Dismiss by both defendants on the ground that the indictment does not state facts constituting a criminal offense against the United States.

2. Motion to Dismiss by the defendant Dyer on the ground that he had obtained immunity.

3. Motion for Relief for Prejudicial Joinder by the defendant Dyer.

4. Motion for Bill of Particulars by both defendants.

5. Motion to Dismiss by the defendant Association on the ground that it had obtained immunity.

6. A document entitled "Interrogatories" filed by both defendants.

Hearing on the aforesaid motions and documents was held before this Court on December 3, 1957, all parties being represented by their respective attorneys. At the hearing the attorneys for the defendant Association requested permission to withdraw its motion to dismiss on the ground that it had obtained immunity, and the attorneys for both defendants requested permission to withdraw the document entitled "Interrogatories." Both requests were granted by this Court, and argument was limited to the four remaining motions, which the Court will now consider in the order in which they are listed above.

I. *The Defendants' Motion to Dismiss on the Ground That the Indictment Does Not State Facts Constituting a Criminal Offense Against the United States.*

Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. provides that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Although it has been stated that an antitrust indictment may be subject to dismissal if the defendant is charged only in terms of the Sherman Act, Frankfort Distilleries, Inc. v. United States, 10 Cir., 1944, 144 F.2d 824, 830, reversed on other grounds, 1945, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 564, it is fundamental that an indictment is sufficient if, when construed as a whole, it informs the accused of the nature of the charges against him so that the defendant can prepare a defense and plead double jeopardy in a second prosecution for the same offense. United States v. Northeast Texas Chapter, National Electrical Contractors Ass'n, 5 Cir., 1950, 181 F.2d 30; United States v. Josephson, 2 Cir., 1947, 165 F.2d 82, certiorari denied 1948, 333 U.S. 838, 68 S.Ct. 609, 92 L.Ed. 1122; Wilson v. United States, 5 Cir., 1947, 158 F.2d 659, certiorari denied 1947, 330 U.S. 850, 67 S.Ct. 1095, 91 L.Ed. 1294; United States v. Armour & Co., 10 Cir., 1943, 137 F.2d 269.

This Court is satisfied that the instant indictment contains all the allegations necessary to charge a violation of Section 1 of the Sherman Act and meets

the requirements of Rule 7(c) and the additional requirements established by judicial decision for Sherman Act cases.

The indictment only contains one count, the essential allegations with respect to the conspiracy being set forth in Paragraphs 12, 13 and 14. In Paragraph 12 the defendants are charged in the generic language of the statute with having from on or about June, 1957, to the date of the return of the indictment:

"* * * engaged in a combination and conspiracy to fix, stabilize and maintain the prices for live Maine lobsters sold by both MLA member and non-member lobstermen to lobster dealers, in unreasonable restraint of * * * trade and commerce * * * in violation of Section 1 of the * * * Sherman Act * * *."

In Paragraph 13 of the indictment the elements of the alleged combination and conspiracy are specified in the following language:

"13. The aforesaid combination and conspiracy has consisted of a continuing agreement and concert of action among the defendants, the co-conspirators described herein, and other persons to the Grand Jury unknown, the substantial terms of which have been and are that the defendants and the co-conspirators agree:

"(a) To fix and establish a minimum selling price for live Maine lobsters sold to lobster dealers;

"(b) To refrain from catching lobsters until said minimum price was obtained;

"(c) To induce and compel all Maine lobstermen, including non-members of MLA, to adhere to the terms of the conspiracy hereinbefore charged."

In Paragraph 14 of the indictment it is further alleged that:

"14. During the time covered by this indictment, the defendants and the co-conspirators, by agreement, understanding and concert of action, have done those things which, as hereinbefore charged, they conspired and agreed to do."

In United States v. Minneapolis Electrical Contractors Ass'n, D.C.Minn.1951, 99 F.Supp. 75, appeal dismissed, 8 Cir., 1953, 207 F.2d 782, the court upheld an indictment under Section 1 of the Sherman Act for conspiracy to restrain trade which was substantially identical to the indictment in the present proceeding. The court pointed out that, as in the instant indictment, the indictment not only charged an offense in the language of the statute, but also set forth the substantial terms of the alleged unlawful conspiracy and agreement and the purpose which was sought to be accomplished. The court held that the indictment was sufficient, saying (99 F.Supp. at page 78):

"Although an anti-trust indictment may be subject to dismissal if the defendant is charged only in the terms of the Sherman Act, Frankfort Distilleries, Inc. v. United States * * * it is fundamental that the indictment need not be detailed or evidentiary * * * The allegations go far past the mere words of the statute and apprise the defendants of the agreements charged against them so that they can recognize what the Government claims were the terms of the conspiracy and what conspiracy was involved. To require the indictment to contain the detail now sought by defendants would render the indictment considerably evidentiary and would make purposeless the rules permitting the bill of particulars which defendants also seek. * * *"

To the same effect see Las Vegas Merchant Plumbers Ass'n v. United States, 9 Cir., 1954, 210 F.2d 732, certiorari denied, 1954, 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645; American Tobacco Company v. United States, 6 Cir., 1944, 147 F.2d 93, 117, affirmed 1946, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575; cf. United States v. Employing Plasterers Ass'n of Chicago, 1954, 347 U.S. 186, 74 S.Ct. 452, 98 L.Ed. 618.

In view of the plain language of Rule 7(c) and the decisions testing indictments brought under the Sherman Act, this Court is of the opinion that the indictment in this proceeding contains all the allegations necessary to charge a violation of Section 1 of the Sherman Act and sufficiently states facts constituting a criminal offense against the United States. Accordingly, the defendants' motion to dismiss on the ground that the indictment does not state facts constituting a criminal offense against the United States is denied.

## II. The Defendant Dyer's Motion to Dismiss on the Ground That He Had Obtained Immunity.

Defendant Dyer in his motion to dismiss the indictment on the ground that he had obtained immunity states that he "was compelled under process of subpoena issued by this Honorable Court to appear and give evidence to the Grand Jury for their proceedings and deliberations which said deliberations resulted in this said indictment against your defendant."

This representation by the defendant is not true, and the claimed immunity is clearly without any legal basis. The Government requested and, with the consent of counsel for the defendants, was granted permission to file with the Court the affidavit of John J. Galgay, Esq., trial attorney in the Anti-Trust Division of the United States Department of Justice, disclosing the facts and circumstances surrounding Dyer's appearance and testimony before the Grand Jury. As appears from this affidavit, a subpoena duces tecum, dated August 14, 1957, directed to the "Maine Lobstermen's Association, 427 Main Street, Rockland, Maine," was served on the same date by a Deputy United States Marshal at the indicated address upon Dyer, president of the Association, who accepted such service on behalf of the Association. The subpoena duces tecum directed the Association to produce certain documents relating to the Association's organizational structure and membership activities. On August 20, 1957, Dyer appeared at the United States Courthouse, Portland, Maine, and informed government counsel that he had in his possession the documents called for in the subpoena. He was, thereupon, called into the Grand Jury room to produce the subpoenaed material before the Grand Jury. He was not placed under oath. While in the Grand Jury room, he was asked his name and address; he was asked if he appeared pursuant to a subpoena served on the Association and if the subpoena called for the production of certain Association documents, to both of which questions he replied in the affirmative. After starting to enumerate the various documents, he was asked whether the folder which he held in his hand contained all of the documents requested and demanded by the subpoena, and he replied that it did. He, thereupon, handed the folder containing the documents to government counsel, and the folder was marked by the Grand Jury reporter as "Grand Jury Exhibit No. 1." No further questions were asked of Dyer, and he was thereupon excused.

Counsel for this defendant raise no issue as to the factual correctness of the above-mentioned affidavit and in their brief specifically concede that Dyer "was not administered the oath when he was interrogated before the Grand Jury concerning the documents which he had produced." At the hearing before this Court, however, Dyer's counsel filed with the Court an affidavit of Dyer stating, in substance, his understanding and belief that the subpoena duces tecum, although directed to the Association, was served upon him personally; that he appeared before the Grand Jury believing that he was a witness and was entitled to the "immunities as held out by the United States Attorneys through the Press"; and that in appearing and producing documents before the Grand Jury he believed that he was "subject to the penalties of perjury."

His counsel contend that under these circumstances the defendant Dyer is entitled to the protection of the Immunity of Witness Statute, 15 U.S.C.A., §§ 32

and 33, specifically relating to the Sherman Act.

The relevant language of the Immunity of Witness Statute is as follows:

> "§ 32. No person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under sections 1–7 of this title * * * *Provided,* that no person so testifying shall be exempt from prosecution or punishment for perjury committed in so testifying."

> "§ 33. Under the immunity provisions in section 32 of ·this title, immunity shall extend only to a natural person who, in obedience to a subpoena, gives testimony under oath or produces evidence, documentary or otherwise, under oath."

It is evident from a simple reading of this statute, that the claim of the defendant Dyer for immunity is without legal justification. Section 33 specifically provides that the immunity granted by Section 32 shall extend only to a natural person who "in obedience to a subpoena, gives testimony *under oath* or produces evidence, documentary or otherwise, *under oath*" (emphasis supplied). In the instant case it explicitly appears from the Government's affidavit and is conceded by the defendant's counsel that Dyer in his appearance before the Grand Jury neither gave testimony nor produced evidence, documentary or otherwise, *under oath*. Under these circumstances, it is clear from the plain and inescapable language of the statute that Dyer received no immunity, and the motion to dismiss the indictment as against the defendant Dyer on the ground that he obtained immunity must be, and hereby is, denied.

In view of the foregoing ruling, it is unnecessary to pass upon the further contentions of the Government with respect to the non-application of the immunity statute to a natural person whose appearance before a Grand Jury is in obedience to a subpoena directed to an association, or other distinct legal entity, of which the natural person is an officer, when the sole purpose of such appearance is to deliver documents belonging to the association, and testimony is limited to the identification of the documents thus produced. The Court will note, however, its concurrence with the position of the Government that in the instant case Dyer merely acted as a representative of the Association in producing before the Grand Jury the documents and papers belonging to the Association which were called for by the subpoena directed to it; that his testimony was limited to the identification of such documents; and that under these circumstances the defendant was not entitled to the immunity provided by the statute. See United States v. Monia, 1943, 317 U.S. 424, 430, 63 S.Ct. 409, 87 L.Ed. 376; Lumber Products Ass'n, Inc., v. United States, 9 Cir., 1944, 144 F.2d 546, 553, reversed on other grounds sub nom. United Brotherhood of Carpenters and Joiners of America v. United States, 1947, 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973; United States v. Detroit Sheetmetal & Roofing Contractors Ass'n, Inc., D.C.E.D.Mich. 1953, 116 F.Supp. 81, 90; United States v. Greater Kansas City Retail Coal Merchants Ass'n, D.C.W.D.Mo.1949, 85 F. Supp. 503, 513. See also, United States v. White, 1944, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542; Brown v. United States, 1928, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500.

III. *The Defendant Dyer's Motion for Relief for Prejudicial Joinder.*

Rule 14 of the Federal Rules of Criminal Procedure provides, in part, that "If it appears that a defendant * * * is prejudiced by a joinder * * * of defendants in an indictment or information or by such joinder for trial together, the court may * * * grant a severance of defendants or provide whatever other relief justice requires." [1]

1. Rule 8(b) of the Federal Rules of Criminal Procedure provides for the joinder of defendants, as follows:

"(b) *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they

Apparently acting under Rule 14, the defendant Dyer, in his motion for relief for prejudicial joinder, requests that the indictment against him and the defendant Association be severed "for the reason that the joinder of said causes is prejudicial" to him.

■ A motion for relief from prejudicial joinder is addressed to the sound discretion of the trial court. Opper v. United States, 1954, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; See 4 Barron, Federal Practice and Procedure, Section 2011 (Rules Ed. 1951). And in conspiracy cases it has been frequently stated that a severance should not be granted except for strong and cogent reasons. See United States v. Lebron, 2 Cir., 1955, 222 F.2d 531, 535; United States v. Brandt, D.C.N.D.Ohio 1955, 139 F.Supp. 367, 369; United States v. Silverman, D.C. Conn.1955, 129 F.Supp. 496, 500.

In United States v. Atlantic Commission Co., Inc., D.C.E.D.N.C.1942, 45 F. Supp. 187, the Court specifically applied the foregoing rule in a criminal prosecution under the antitrust laws and denied a motion for severance, saying (at page 190):

"* * * the general rule is that it is inadvisable to split a case into many parts, to be disposed of piecemeal, in the absence of very strong and cogent reason therefor. This is especially true in conspiracy charges."

In United States v. Silverman, supra, the court thus stated the prevailing law (129 F.Supp. at page 500):

"* * * In a conspiracy case where the charge against all the defendants may be largely proved by the same evidence and results from a similar series of acts, as is alleged here, a severance should not be granted except for strong and cogent reasons. * * * Moreover, evidence relating to acts and declara-

tions of all the conspirators in furtherance of the conspiracy are admissible against all whether or not each defendant is tried alone or jointly * * *."

The defendant Dyer, in his motion, does not attempt to substantiate his claim of prejudice. He has submitted no affidavits in support of his contentions, nor were his counsel able to suggest for the Court's consideration in what respects he might be prejudiced by a joint trial with the defendant Association.

■ After careful consideration of the arguments presented by counsel in support of this motion, this Court is unable to find that the defendant Dyer will be prejudiced by a joint trial. The indictment charges a continuing agreement and conspiracy between the defendants, and it would seem to follow that substantially the same evidence will be used to prove the charges against them both. A severance could in no way lessen the evidence against Dyer or remove from the jury's consideration the Government's evidence against the Association. If the defendant were to be allowed a separate trial, the only result would seem to be two trials of almost identical content, which would unreasonably burden the court without providing any relief from prejudice to the defendant.

No definite situation having been presented for the Court's consideration to substantiate this defendant's claim of prejudice, the motion for relief for prejudicial joinder must be, and hereby is, denied.

IV. *The Defendants' Motion for Bill of Particulars.*

In their motion for a bill of particulars, the defendants state that the gist of the criminal offense alleged in the indictment is contained in paragraphs numbered 12, 13 and 14, and that the statements and allegations contained in said paragraphs are "vague, indefinite and

---

are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants

may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

uncertain, and represent conclusions rather than factual statements relating to transactions," because of which the defendants cannot be fairly apprised of the crimes alleged against them so that they can adequately prepare their defense and plead to the indictment. The defendants request that the government be directed to furnish them with particulars relating to the indictment, setting forth with certainty and definiteness the matter of "times and places, events and things" allegedly constituting the conspiracy charged.

Rule 7(f) of the Federal Rules of Criminal Procedure provides that "The court for cause may direct the filing of a bill of particulars." Such a motion is addressed to the sound discretion of the trial court. Wong Tai v. United States, 1927, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545; American Tobacco Company v. United States, supra, 147 F.2d at page 117.

The fundamental purpose of a bill of particulars is to inform the accused of the charges against him with sufficient definiteness to permit him to prepare for trial, to prevent undue surprise and to protect him against a second prosecution for the same offense. Wong Tai v. United States, supra; United States v. General Electric Co., D.C.S.D. N.Y. 1941, 40 F.Supp. 627, 632. And it has been frequently stated that a motion for a bill of particulars under an indictment charging a conspiracy in violation of the Sherman Act must be tested by principles singular to such cases, since in anti-trust prosecutions overt acts need not be pleaded or proved, so long as the conspiracy itself is sufficiently charged and established. United States v. Aluminum Co. of America, D.C.S.D.N.Y.1941, 41 F.Supp. 347; United States v. General Electric Co., supra, 40 F.Supp. 632. See also in this regard United States v. Socony-Vacuum Oil Co., Inc., 1940, 310 U.S. 150, at pages 225 note and 252, 60 S.Ct. 811, 84 L.Ed. 1129; Nash v. United States, 1913, 229 U.S. 373, 378, 33 S.Ct. 780, 57 L.Ed. 1232.

In United States v. General Petroleum Corp. of California, D.C.S.D.Cal.1940, 33 F.Supp. 95, these general principles were applied to a motion for particulars under an indictment charging a violation of the Sherman Act. In denying the motion, the court there stated (at page 97):

"As we believe it is merely surplusage to enter into a minute discussion of the office of a bill of particulars in a criminal case, we will briefly state our reasons for refusing to require the government to amplify the allegations of the indictment except as hereinafter ordered. Because the demands of defendants for enlargement of an accusation of a criminal offense cannot be considered or dealt with in the abstract, the applicability of this form of pretrial criminal procedure must be viewed in the light of the specific case as it is laid in the indictment that is immediately before the court for consideration. This is especially true in charges of conspiracy to violate the anti-trust laws of the United States. In such prosecutions, if the indictment, considering the record history of the case, adequately states the alleged unlawful combination or conspiracy so as to enable all accused to clearly understand it, to properly prepare for trial within a reasonable time, and to avoid prejudicial surprise at the trial, a court order requiring detailed enlargement or expansion of the essential ultimate facts sufficiently pleaded may operate to cripple and nullify the established national policy of prohibiting or treating as illegal all contracts or combination of individuals or corporations substantially restrictive of free competition, or to fix prices of commodities, in the channels of interstate business."

Examining the instant indictment in light of the fundamental purposes of a bill of particulars, with particular reference to anti-trust prosecutions, as hereinabove stated, this Court is satisfied that these requirements are

met and that the defendants are sufficiently informed of the charges against them for every purpose enumerated above.

In Paragraph 12 of the instant indictment the defendants are informed that they are charged with a combination and conspiracy among themselves, the co-conspirators (identified in Paragraph 4 of the indictment as the remaining officers, delegates, executive council and members of the Association), and other persons to the Grand Jury unknown, to fix, stabilize and maintain the prices for live Maine lobsters in unreasonable restraint of interstate trade and commerce, in violation of Section 1 of the Sherman Act. The conspiracy is alleged to have commenced on or about June, 1957, and to have continued to the date of the return of the indictment, which was October 15, 1957.

Paragraph 13 of the indictment further sets forth the substantial terms of the combination and conspiracy, involving an agreement: (a) to fix and establish a minimum selling price for live Maine lobsters sold to lobster dealers; (b) to refrain from catching lobsters until said minimum price was obtained; and (c) to induce and compel all Maine lobstermen, including non-members of the Association to adhere to the terms of the conspiracy.

In Paragraph 14 of the indictment the defendants are informed that they are charged with having in fact done those things which they are charged with having conspired and agreed to do.

Paragraphs 12, 13 and 14 of the indictment thus inform the defendants of the specific crime with which they are charged, to wit: a conspiracy to fix prices of live Maine lobsters in violation of Section 1 of the Sherman Act, and of the specific conspiracy with which they are charged, including the time of the conspiracy, the persons involved, and the terms of the conspiracy. It is the opinion of this Court that the defendants are thereby adequately informed of the crime with which they are charged and are in a position to plead to the indictment, to prepare their defense, to avoid undue surprise, and to be protected against a second prosecution for the same offense. Further particulars as to "times and places, events and things" allegedly constituting such conspiracy would require the specification of matters which are essentially evidentiary, would unduly hamper and restrict the Government in the presentation of its case, and are wholly unnecessary for any legitimate purpose which the defendants might have either in pleading to the indictment or in preparing their defense for trial.

For the reasons stated, after careful consideration of the arguments presented by the defendants, the Court is satisfied that in the exercise of its sound discretion the defendants' motion for a bill of particulars must be, and it hereby is, denied.