**SAN JUAN RACING ASSOCIATION, INC., Plaintiffs, Appellees,**

v.

**ASOCIACION DE JINETES DE PUERTO RICO, INC., etc., et al., Defendants, Appellants.**

No. 78–1244.

United States Court of Appeals, First Circuit.

Submitted Nov. 9, 1978.

Decided Jan. 5, 1979.

Pedro J. Varela and Victor R. Ramos, Hato Rey, P. R., on brief for appellants.

Manuel Gonzalez Gierbolini, Hato Rey, P. R., and Brown, Newsom & Cordova, San Juan, P. R., on brief for appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal in an antitrust case from a preliminary injunction directing defendants-appellants, who are jockeys, and their association, to refrain from participating in any combination or conspiracy to refuse to do business with plaintiff-appellee, San Juan Racing Association, Inc. (SJRA).* The factual background is simple and sparse. Defendants have, since 1974, had their compensation for racing at plaintiff's racetrack determined by the terms of a settlement of litigation with the horse owners subsequently incorporated in official racing regulations, purportedly binding for 15 years. In January of 1978 defendants initiated a request for an increase in the percentage of the purse allocable to jockeys. No satisfactory progress was made in resolving this pay controversy. On April 28, 1978, a night of scheduled racing, all of the jockeys at plaintiff's racetrack refused to race, saying either that they would not or that they would race only if all would race. Racing was thereupon cancelled for that night and the following Sunday. The district court, after hearing, granted a temporary restraining order on May 5 and a preliminary injunction on May 15.

There is no issue as to whether plaintiff was engaged in interstate commerce, this being stipulated. Nor is there any contention that defendants and their association fall within the labor exemption to the antitrust laws. 15 U.S.C. § 17; 29 U.S.C. §§ 52, 101, 113. The allegations in the complaint that defendants were independent businessmen, providing their own equipment, and free of any control by the horse owners or trainers to whom they contract their services were admitted, and the district court so found. We add that no argument has been made that, even though defendants are not "employees" of the owners and trainers,

they are exempt from an injunction because this case involves a "labor dispute" within the meaning of section 13(c) of the Norris-LaGuardia Act, 29 U.S.C. § 113(c). Such an argument would seem foreclosed by *Taylor v. Local No. 7, International Union of Journeymen Horseshoers,* 353 F.2d 593, 602–606 (4th Cir. 1965), *cert. denied,* 384 U.S. 969, 86 S.Ct. 1859, 16 L.Ed.2d 681 (1966). *See also Conley Motor Express, Inc. v. Russell,* 500 F.2d 124 (3d Cir. 1974); *Betteroads Asphalt Corp. v. Federacion de Camioneros,* 391 F.Supp. 1035, 1039 (D.P.R.1975).

■ That they acted together, in combination, is a supportable finding on this record. *Interstate Circuit v. United States,* 306 U.S. 208, 221–223, 59 S.Ct. 467, 83 L.Ed. 610 (1939). Their openness does not immunize agreement. *United States v. Spock,* 416 F.2d 165, 169–170 (1st Cir. 1969). That defendants' collective refusal to deal with plaintiff until their fees were increased constituted an illegal effort to control prices through concerted action was also supportable on the pleadings and evidence before the court. *See American Column & Lumber Co. v. United States,* 257 U.S. 377, 42 S.Ct. 114, 66 L.Ed. 284 (1921); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Sealy, Inc.,* 388 U.S. 350, 87 S.Ct. 1847, 18 L.Ed.2d 1238 (1967). The fact that the district court here supportably found that there had been a concerted refusal to deal adequately distinguishes this case from *Yonkers Raceway v. Standardbred Owners Ass'n,* 153 F.Supp. 552 (S.D.N.Y.1957), where the court found insufficient evidence of concerted action to justify a preliminary injunction.

■ Defendants attempt to escape the snare by invoking *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1942). But they are not in the position of defending rates of compensation *compelled* by state law; their whole purpose is to *abolish* such rates and establish new ones. They cannot have the protection of the law they would circumvent or set aside. Nor do de-

---

* The SJRA operates the only racetrack for thoroughbred horses in Puerto Rico, El Comandante. Two groups of horse owners, Club Hipico de Puerto Rico and Federacion Puertorriquenade de Duenos de Caballos, Inc., were allowed to intervene as plaintiffs.

fendants fare better in their argument that plaintiff should have exhausted administrative remedies or, alternatively, should have respected the primary jurisdiction of the Racing Administration. For plaintiff's resort to the district court was not to determine a new basis for compensation—something that might well be within the primary jurisdiction of the Racing Administration— but to dissolve the concerted refusal to deal which defendants had engaged in. *Cf. United States v. Radio Corporation of America,* 358 U.S. 334, 346–348, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959).

While we sense an inappropriateness about characterizing jockeys seeking an increase in their compensation as would-be monopolists equal to that of treating ruggedly individualistic lobster fishermen as antitrust conspirators, *cf. United States v. Maine Lobstermen's Ass'n,* 160 F.Supp. 115 (D.Me.1957), we conclude on the basis of this sparse record, that the judgment must be

*Affirmed.*