UNITED STATES of America

v.

The GLOBE CHEMICAL CO., Inc., the Herbert Chemical Company, Foremost-McKesson, Inc., Calvert Chemical Co., Chemicals, Inc.—U. S. A., Joseph B. Engelhardt, Individually, and James R. Harrington, Individually.

Crim. No. 11428.

United States District Court,
S. D. Ohio, W. D.

Feb. 4, 1969.

On Motion to Dismiss for Undue Pre-indictment Delay Oct. 10, 1969.

On Motion to Dismiss for Failure to Set Forth Facts Constituting Offense Oct. 28, 1969.

On Motion of Globe Chemical Co., Inc., to Dismiss Indictment Oct. 29, 1969.

On Motion to Dismiss on Grounds of Immunity from Prosecution Nov. 4, 1969.

Edwin M. Zimmerman, Asst. Atty. Gen., Washington, D. C., Baddia J. Rashid, Carl J. Steinhouse; Dwight D. Moore, Joseph J. Calbert, John A. Weedon, Robert A. McNew, Attys., Dept. of Justice, Antitrust Division, Cleveland, Ohio, Robert M. Draper, U. S. Atty., S.D. Ohio, Columbus, Ohio, Thomas R. Smith and Robert A. Steinberg, Asst. U. S. Attys., Cincinnati, Ohio, for plaintiff The United States.

J. Wallace Adair, Howrey, Simon, Baker & Murchison, Washington, D. C., Robert G. Stachler, Taft, Stetinius & Hollister, Cincinnati, Ohio, for defendant The Globe Chemical Co. Inc.

Irving Harris, Cors, Hair & Hartsock, Cincinnati, Ohio, for defendants The Herbert Chemical Co. and James R. Harrington.

Daniel A. Rezneck, Arnold & Porter, Washington, D. C., Powell McHenry, Thomas S. Calder, Lawrence R. Elleman, Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for defendant Foremost-McKesson, Inc.

Steven F. Williams, Nelson Schwab, Jr., Graydon, Head & Ritchey, Cincinnati, Ohio, for defendant Calvert Chemical Co.

Samuel M. Allen, Strauss, Troy & Ruehlmann, Cincinnati, Ohio, for defendant Chemicals, Inc.—U.S.A.

Murray S. Monroe, L. Clifford Craig, Cincinnati, Ohio, for defendant Joseph B. Engelhardt.

## MEMORANDUM OF OPINION AND ORDER

PORTER, District Judge.

The defendants have filed what they have denominated a "Motion to Inspect Certain Records and to Examine Certain Witnesses in Connection with the Selection of Grand Juries and Proceedings before Grand Juries and to Set Aside the Order Impounding Documents." This has been thoroughly briefed and was the subject of oral arguments, and this is the memorandum of the Court's decision on the motion.

The defendants have all been arraigned and entered pleas of not guilty. This was without prejudice to their right to move to dismiss the indictment or file other Rule 12 motions within ten (10) days after they received any information which the Court orders the government to make available to them in response to this motion.

In general, the motion may be characterized as a request for broad discovery of how the grand jury was selected, who appeared before it, and what it did. There is no showing of any irregularity in the proceedings of the grand jury, but only a belief that there might have been irregularity or abuse of the grand jury by the government's attorneys in presenting the case to the grand jury which returned this indictment.

There are two grand juries in the picture. One had the case under investi-

gation for eighteen months. No indictment was returned. There is nothing to indicate that there was a refusal to indict, just no indictment. The next grand jury took up the investigation. Where the first grand jury examined a number of documents and twenty-one witnesses over an eighteen-month period, the second one examined six witnesses in approximately eight sessions, over a period of six months, and returned an indictment. The defendants seek to find out whether selected portions of the transcript of the testimony heard by the first grand jury were read to the second grand jury, a practice which came under review in the case of In re Grand Jury Investigation of Banana Industries, 214 F.Supp. 856 (D.Md., 1963).

██ "An indictment returned by a legally constituted and unbiased grand jury * * * if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more." Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1955). Hence the only question can be whether the Fourteenth Amendment, Fed.R.Crim.P. Rules 6 or 16, requires serious consideration of that part of the defendants' motion which seeks discovery of what went on in the grand jury proceedings. On this there is an abundance of authority.

To begin with there are a number of good reasons for the traditional doctrine of grand jury secrecy. These are too well known to need summarization here, and it will suffice to refer to the summary in United States v. Rose, 215 F.2d 617, 628–629 (3 Cir., 1954), and what the Supreme Court said in United States v. Procter & Gamble, 356 U.S. 677, 681–682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1957).

For a history of the grand jury, see Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 100 L.Ed. 397 (1955).

Even a casual reading of these and other authorities is enough to remind us of the importance of the doctrine of secrecy and why the veil of secrecy will not lightly be drawn aside.

██ Hence, it is not surprising, as pointed out by the government (page 5 of government's memo), there must be a "strong and positive" showing of irregularity before grand jury proceedings will be subjected to discovery and that such a showing is not made on mere allegations based on information and belief. United States v. Brennan, 134 F.Supp. 42, 52–53 (D.Minn., 1955), aff'd 240 F.2d 253 (8 Cir.), cert. den. 353 U.S. 931, 77 S.Ct. 718, 1 L.Ed.2d 723 (1957); United States v. Aman, 13 F.R.D. 430, 431 (N.D.Ill., 1953), aff'd 210 F.2d 344 (7 Cir., 1954); United States v. Brumfield, 85 F.Supp. 696, 705–706 (W.D.La., 1949); see also, United States v. American Medical Association, 26 F.Supp. 429 (D.D.C., 1939). See also, Orfield, Vol. 1, Section 6:126, where it is stated:

"It has been said that inspection will be denied in the absence of a strong and positive showing that an indictment was founded solely on incompetent or illegal evidence, or presented in violation of constitutional rights, or as the result of fraud, corruption or caprice."

The defendants contend (defendants' memorandum, page 5), "It is necessary for counsel to examine the minutes of both grand juries to determine whether such abuse [use before the second grand jury of selected portions of the testimony taken before the first grand jury] existed." This is far from a "showing of irregularity."

Furthermore, it is the view of this Court that this is not a sufficient showing of a particularized need to justify penetrating the veil of secrecy which surrounds grand jury proceedings. See Vol. 1, Orfield, Criminal Procedure under the Federal Rules, Section 6:128. It is likewise the view of this Court that this is not a sufficient showing to justify an in camera inspection, much less a quasi-in camera inspection (one with counsel present but not taking notes) requested by defense counsel in oral argument.

On this subject of a request to inspect grand jury minutes to support a contention that government attorneys were guil-

ty of misconduct before the grand jury it appears that in the exercise of the sound discretion to which this is addressed, the Court may deny the motion where the affidavits in support of the motion, although uncontradicted, show no impelling reason for the production of grand jury minutes. Orfield, section 6:123, citing Beatrice Foods Co. v. United States, 312 F.2d 29 (8 Cir., 1963), cert. den., 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199.

The defendants would have the Court discount cases which are thirty or forty years old, e. g., *Costello, supra.* We decline the invitation as to *Costello.* We also think there are others of the same vintage which have force today. Thus, in Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), the Supreme Court refused to quash an indictment returned by a grand jury which heard testimony of a party who related statements made by the defendant under circumstances which made them inadmissible. But see, United States v. Tane, 329 F.2d 848 (2 Cir., 1964), where the opposite result was reached in view of a disclosure by the United States Attorney that the indictment was based almost exclusively on illegally obtained evidence.

And in United States v. American Medical Assn., 26 F.Supp. 429 (D.D.C., 1939) the Court would not dismiss an indictment even in face of averments on information and belief that government attorneys presented irrelevant testimony to the grand jury, advised the grand jury concerning the law, and acted improperly in obtaining the indictment. The Court held the power to go behind an indictment is "justified only where by proper verified pleading a clear and positive showing is made of gross and prejudicial irregularity influencing the grand jury in returning an indictment" (page 431).

And see United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943), where the Court stated in reversing an order dismissing an indictment:

"Were the ruling of the court below allowed to stand, the mere challenge, in effect, of the regularity of a grand jury's proceedings would cast upon the government the affirmative duty of proving such regularity. Nothing could be more destructive of the workings of our grand jury system or more hostile to its historic status" (page 513, 63 S.Ct. page 1238).

And in Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1957), the Court denied a defense request that a hearing be held to determine if a subsequent indicting grand jury used the same testimony produced before a prior grand jury which did not return an indictment.

■ In the light of the cases, the motion to inspect the grand jury minutes is denied. The Court also declines to make an in camera inspection for the purposes of a Rule 12 motion.

In reaching this result, we have not overlooked considering the cases relied on by the defendants: Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) and United States v. Arcuri, 282 F.Supp. 347 (E.D.N.Y., 1968). *Russell* was found inapposite and *Arcuri* announces a prospective rule for the Eastern District of New York. And, of course, we have considered the *Banana Industries* case, *supra.* There the Court was faced with a request to permit transcript of grand jury proceedings to be taken out of the District for use in another investigation and authorized only the transcript of witnesses who were unavailable, in the belief that live testimony is "better and fairer than recorded testimony."

And, of course, there is Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), where, in a *trial* situation, the Court said:

"In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant facts. Exceptions to this are justifiable only by the clearest and most compelling considerations."

This is said to be a policy statement on the production of transcripts for use by defendants in criminal proceedings. See United States v. Owens-Corning-Fiberglas Corp., 271 F.Supp. 561 (N.D.Cal., 1967), where the defendants moved to inspect the grand jury minutes of the grand jury of the Northern District of Ohio. The Court said:

"The policy now favors the release of relevant grand jury testimony in criminal cases over the former policy of secrecy where the reason for secrecy is minimal and the trial requirements of the defendant's case are apparent."

In the language of that case, this Court does not find the reason for the secrecy rule minimal at this stage of the proceedings. We recognize the area of the defendants' concern, but think it would be a dangerous precedent to allow a fishing expedition through grand jury proceedings in search of irregularities by government attorneys, as it would be availed of by some for purposes of delay every time a case was passed from one grand jury to the next. It would only be a step away from a request by every defendant for a look at the grand jury proceedings which led up to his indictment to see if he was fairly *accused.*

We have also taken note of the cases where grand jury testimony and the resulting indictment were referred to and employed in subsequent civil proceedings, in which cases there is held to be a waiver of secrecy by the government. See, for example, United States v. Ben Grunstein and Sons Co. (D.C.N.J., 1955) 137 F. Supp. 197; and United States v. Pennsalt Chemicals Corp. (D.C.E.D.Pa., 1966) 260 F.Supp. 171.

The defendants' motion has eight parts. The foregoing is dispositive of the second part. It also is dispositive of the fourth part, which contains a request for permission to examine the foremen of the two grand juries and such other persons as may be directed by the Court who may have knowledge of the facts pertaining to the proceedings.

The first part contained a request for permission to inspect all ballots relating to this case of the grand jury impaneled April 29, 1968 and discharged December 20, 1968. The reason for this request is to determine whether the foreman, Carl Zimmerman, who not present at all of the sessions, was one of the group concurring in the decision to return an indictment and to determine further whether that decision was made by a bare majority of twelve. As stated in open court, the Court made an in camera inspection of what is called the ballot, and this indicates the number who concurred in the decision, and it is more than twelve. It seems unnecessary to go beyond that and state the number who did concur in the decision to return the indictment.

A copy of the report showing that number has been placed in a sealed envelope and left in the vault in the Clerk's Office, rather than in the custody of the Court Reporter, and it is ordered to be made a part of the record in this case.

Going back to the second part of the motion, a distinction must be made between the request of the individual defendant, James R. Harrington, for a transcript of his testimony taken before the grand jury and the request of all the defendants for a transcript of all the testimony taken before both grand juries.

As to the request of James R. Harrington as an individual for the testimony he gave before the grand jury, it is the opinion of the Court that even for the purpose of preparing a Rule 12 motion he has shown a "particularized need," namely for use in his attempt to establish immunity as well as for preparation of the case in the event immunity was not granted. This request may even fall under Rule 16(a) Fed.R.Crim. P., which provides in part:

"Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph * * * recorded testimony of the defendant before a grand jury."

The next part of the motion (5 and 6) is a request to examine all records of the Court pertaining to selection, ve-

nire, qualification, impanelling, charging and release of both of the grand juries. It is also a request for permission to examine in open court the Deputy Clerk, the Jury Commissioner, and "such other persons as the Court may direct, who have knowledge of the facts concerning the selection, venire, qualifications, etc."

This deserves little comment. We find it without merit, and it is therefore overruled. United States v. Hoffa, 349 F.2d 20 (6 Cir., 1965), aff'd on other grounds 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

There, at page 30, the Court said:

"The courts will not permit a full-scale investigation to be made of its jury panel until it is suspect. If this were not so the trial of a criminal case could be diverted by unsupported charges. * * *

"Distinct evidence in support of the motion must be offered [citation omitted]. The evidence must be more than mere statements of counsel of what they hope they will be able to prove."

The thrust of such proof (of which there is none) must be that there was systematic and intentional exclusion of a group. To say that the grand jury was suspect because under the old system, even though the names were drawn at random (as under the new system), for convenience, they were pulled from voter registration lists in Hamilton County, while from voter lists in other counties (four of which had no voter registration list) is ridiculous on its face.

The ruling is the same in connection with the request of the defendants for permission to call one jury commissioner as a witness to show that at the time the names were drawn from Hamilton County voting lists he was not present. Counsel have this information in the record anyhow. See affidavit of Samuel Allen filed January 29, 1969.

Going back to part 3, the request for a list of persons including witnesses present in the grand jury room—in case this is to find out whether the Antitrust Division attorneys were authorized to be present, they have agreed the Clerk may show defense counsel the letters authorizing them to act in this matter. The government has also not objected to an order permitting inspection of impounded documents covered by Branch 7 of the motion, in Cincinnati, at reasonable times and under reasonable conditions after a proper motion to inspect is made.

In view of this, the December 20, 1968 impounding order of Judge Hogan stands.

Going back to part 5, of course certain records showing the manner of selection, venire, qualifications, impaneling and charging are available, since they are public records. The records showing the attendance of the grand jurors at the various sessions held are also public and available and may be inspected. The list of witnesses is secret and must remain so.

The Court, on its own motion, orders that such grand jurors not be interviewed except with the Court's permission, on application, and for good cause shown. It will not be "good cause" that the defendants want to find out if there were any irregularities before the grand jury.

It is, therefore, ordered that the motion be and it is hereby denied in its entirety except as follows:

First: The government's attorneys are ordered to produce to the defendant James R. Harrington a transcript of his testimony before the grand jury.

Second: To the extent the motion seeks in its first part to examine the ballots of the grand jury which returned the indictment, an in camera inspection has been made of the report, denominated a "ballot," which shows the number of grand jurors who concurred in the decision to return the indictment; this examination shows that it was more than twelve; and a copy of the report has been made, placed in a sealed envelope in the custody of the Clerk with an order that it be made a part of the record in this case.

Third: The Clerk may show defense counsel the letters of authority of govern-

ment attorneys to present the case to the grand jury.

Fourth: The Court orders that the government attorneys permit, on motion and appropriate order, inspection of impounded documents, in Cincinnati, as requested in part 7 of the motion, at reasonable times and under reasonable conditions. This is not for purposes of a Rule 12 motion. Hence, the ten-day period within which such motions must be filed starts with the entry of this Order, except as to the defendant James R. Harrington, who is given ten days from the date he is furnished a transcript of his testimony before the grand jury within which to file a Rule 12 motion.

### On Motion to Dismiss for Undue Preindictment Delay

This cause came on for hearing on the motion of defendants to dismiss the indictment for undue preindictment delay. This stands submitted on briefs, affidavits, and oral argument.

Of course the motion is based on the Sixth Amendment's guarantee of a speedy trial and Rule 48(b), F.R.Crim.P. The latter provides:

" * * * If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant *who has been held to answer to the District Court* * * the court may dismiss the indictment * * *." (Emphasis added.)

At the outset we must note that any antitrust case presents a complex situation which must be carefully and painstakingly investigated. We must take note also of the necessity for the government to proceed by subpoenaing a number of documents (in this case 60,000) and examining lower eschelon witnesses in order not to grant immunity through inadvertence to a higher eschelon witness.

The Court's discussion of the many points raised by the defendants must necessarily be limited. Chief reliance seems to be placed by the defendants on United States v. Parrot, 248 F.Supp. 196 (D.D. C., 1965). We find this case distinguish-able from the one before this Court. For one thing, criminal prosecution in *Parrot* was held in abeyance (apparently negligently and deliberately) while civil suits were prosecuted, so that the government could use the fruits of the civil proceedings in the criminal prosecution. Also, as the Court in *Parrot* indicated (p. 202, para. 8 and footnote 31), the United States Court of Appeals for the Sixth Circuit applies a different rule concerning the computation of time for the purpose of determining whether or not there has been delay.

It seems more appropriate to use the guidelines laid down by the Supreme Court in United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1965), where the Court says:

"We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'the right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice. Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950. 'Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the cir-

cumstances. * * * The delay must not be purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393. '(T)he essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041.''

▪ Applying that to the facts disclosed by the affidavit and supplemental affidavit of Joseph J. Calvert in support of the government's memorandum, we conclude that the delay in this case was not purposeful or oppressive. Considering all the circumstances we must also conclude that there was no undue preindictment delay, but, on the contrary, that the case was prosecuted expeditiously and with the deliberateness which should characterize such investigations.

The Court therefore finds the motion is not well taken, and it is therefore overruled.

### On Motion to Dismiss for Failure to Set Forth Facts Constituting Offense

In addition to a motion to dismiss for preindictment delay, the defendants have filed a motion to dismiss the indictment for failure to set forth a plain, concise and definite written statement of the essential facts constituting the offense charged.

The indictment is attached hereto. It will be seen that it is divided into six parts. The first is descriptive of the defendants. The second, the co-conspirators. The third defines industrial chemicals as meaning "those chemical compounds and elements such as mineral acids, alkalis, water purification chemicals and solvents used in industry and in the operations of agencies of various governmental units or subdivisions thereof." "Cincinnati area" is defined as the City of Cincinnati and the territory surrounding it within a radius of approximately 50 miles.

The fourth describes the nature of the trade and commerce. The fifth, the offense charged; and sixth, the effects.

As to the offense charged, in paragraph 9 it is stated that beginning sometime prior to 1964 and continuing thereafter and up to and including the date of the return of the indictment, the defendants and co-conspirators "have engaged in a combination and conspiracy in unreasonable restraint of the previously described interstate trade and commerce. * * * *''

It will be observed that this is couched in the language of the statute, 15 U.S.C. § 1, commonly known as the Sherman Act.

However, in the next paragraph the offense charged is elaborated on by explaining that it "consisted of a continuing agreement, understanding and concertive action among defendants, co-conspirators * * * the substantial terms of which have been *to fix, raise, and maintain the prices of industrial chemicals and to fix and maintain other terms and conditions of sale, such as transportation charges, in the Cincinnati area''* [emphasis added].

Finally, in describing the offense charged, the indictment states that "for the purpose of forming and effectuating the aforesaid combination and conspiracy, the defendants and co-conspirators have done those things which, as hereinbefore charged, they combined and conspired to do."

The attack on this indictment is based primarily on the contention that it runs afoul of Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1961). It is therefore appropriate to quote at some length from what the Court says in *Russell* about the sufficiency of "charging papers."

As we have elsewhere noted, "This Court has, in recent years, upheld many convictions in the face of questions concerning the sufficiency of the charging papers. Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused. [Citing cases.] This has been a salutary development in the criminal law." Smith v. United States, 360 U.S. 1, 9, 79 S.Ct. 991, 996,

3 L.Ed.2d 1041. "But," as the *Smith* opinion went on to point out, "the substantial safeguards to those charged with serious crimes cannot be eradicated under the guise of technical departures from the rules." *Ibid.* Resolution of the issue presented in the cases before us thus ultimately depends upon the nature of "the substantial safeguards" to a criminal defendant which an indictment is designed to provide. Stated concretely, does the omission from an indictment under 2 U.S.C. § 192, 2 U.S.C.A. § 192 of the subject under congressional committee inquiry amount to no more than a technical deficiency of no prejudice to the defendant? Or does such an omission deprive the defendant of one of the significant protections which the guaranty of a grand jury indictment was intended to confer?

In a number of cases the Court has emphasized two of the protections which an indictment is intended to guarantee, reflected by two of the criteria by which the sufficiency of an indictment is to be measured. These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' Cochran and Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 633, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 448, 40 L.Ed. 606." Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861; See Potter v. United States, 155 U.S. 438, 445, 15 S.Ct. 144, 146, 39 L.Ed. 214; Bartell v. United States, 227 U.S. 427, 431, 33 S.Ct. 383, 384, 57 L.Ed. 583; Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630; United States v. Debrow, 346 U.S. 374, 377–378, 74 S.Ct. 113, 115–116, 98 L.Ed. 92.

Without doubt the second of these preliminary criteria was sufficiently met by the indictments in these cases. Since the indictments set out not only the times and places of the hearings at which the petitioners refused to testify, but also specified the precise questions which they then and there refused to answer, it can hardly be doubted that the petitioners would be fully protected from again being put in jeopardy for the same offense, particularly when it is remembered that they could rely upon other parts of the present record in the event that future proceedings should be taken against them. See McClintock, Indictment by a Grand Jury, 26 Minn.L.Rev. 153, 160; Bartell v. United States, 227 U.S. 427, 433, 33 S.Ct. 383, 384, 57 L.Ed. 583. The vice of these indictments, rather, is that they failed to satisfy the first essential criterion by which the sufficiency of an indictment is to be tested, *i. e.*, that they failed to sufficiently apprise the defendant "of what he must be prepared to meet."

As has been pointed out, the very core of criminality under 2 U.S.C. § 192, 2 U.S.C.A. § 192 is pertinency to the subject under inquiry of the questions which the defendant refused to answer. What the subject actually was, therefore, is central to every prosecution under the statute. Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.

"It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species—it must descend to particulars.'" United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588. An indictment not framed to apprise the defendant "with reasonable certainty, of

the nature of the accusation against him \* \* \* is defective, although it may follow the language of the statute.". United States v. Simmons, 96 U.S. 360, 362, 24 L.Ed. 819. "In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished; \* \* \*." United States v. Carll, 105 U.S. 611, 612, 26 L.Ed. 1135. "Undoubtedly the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." United States v. Hess, 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516. See also Pettibone v. United States, 148 U.S. 197, 202–204, 13 S.Ct. 542, 545, 37 L.Ed. 419; Blitz v. United States, 153 U.S. 308, 315, 14 S.Ct. 924, 927, 38 L.Ed. 725; Keck v. United States, 172 U.S. 434, 437, 19 S.Ct. 254, 255, 43 L.Ed. 505; Morissette v. United States, 342 U.S. 246, 270, n. 30, 72 S.Ct. 240, 253, 96 L.Ed. 288. Cf. United States v. Petrillo, 332 U.S. 1, 10–11, 67 S.Ct. 1538, 1543, 91 L.Ed. 1877.[12] That these basic principles of fundamental fairness retain their full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure, is illustrated by many recent federal decisions.[13]

The vice which inheres in the failure of an indictment under 2 U.S.C. § 192, 2 U.S.C.A. § 192 to identify the subject under inquiry is thus the violation of the basic principal "that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, \* \* \*." United States v. Simmons, supra, 96 U.S. at 362. A cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined. It enables his conviction to rest on one point and the affirmance of the conviction to rest on another. It gives the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture. The Court has had occasion before now to condemn just such a practice in a quite different factual setting. Cole v. Arkansas, 333 U.S. 196, 201–202, 68 S.Ct. 514, 517, 92 L.Ed. 644. And the unfairness and uncertainty which have characteristically infected criminal proceedings under this statute which were based upon indictments which failed to specify the subject under inquiry are illustrated by the cases in this Court we have already discussed. The same uncertainty and unfairness are underscored by the records of the cases now before us. A single example will suffice to illustrate the point. Russell v. United States, supra, at 763–766, 82 S.Ct. at 1046.

It is next in order to state that we find the Russell case distinguishable from the one now before this Court. Clearly in Russell the sufficiency of the indictment could not be determined by the Court in the absence of a description in the indictment of the subject matter of congressional inquiry.

Next, we find it in order to state our conclusion that Russell does not change or weaken the following test for the legal sufficiency of an indictment given by the Court in United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588 (1875):

"\* \* \* The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are

to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances."

As noted by the Court in Flying Eagle Pub. Inc. v. United States, 273 F.2d 799 (1 Cir., 1960), the foregoing quote from *Cruikshank* is a clear and succinct statement of the test for the legal sufficiency of an indictment.

To determine the applicability of the *Russell* and *Cruikshank* tests to the indictment in this case, it is next in order to examine Section 1 of the Sherman Act and cases bearing on the question of what constitutes an offense under it.

In doing this it is only necessary to concentrate on whether the indictment in the case before this Court contains sufficient facts to apprise the defendants of what they are charged with, and to enable the Court to determine the legal sufficiency of the indictment—because the defendants concede that the indictment is sufficient from the standpoint of double jeopardy.

Section 1 of the Sherman Act provides in part as follows:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *." 15 U.S.C. § 1.

A charge of concerted action under § 1 of the Sherman Act occupies a different status than a charge under a general conspiracy statute (see government's brief at page 3). Also, we adopt the following from the government's brief (page 4):

"The principal difference between a charge under Section 1 of the Sherman Act and a charge under a general conspiracy statute is that under the Sherman Act, *overt acts need not be alleged*—it is the conspiracy itself which is the crime. Nash v. United States, *supra* [229 U.S. 373] at 378 [33 S.Ct.

780, 57 L.Ed. 1232] ; American Tobacco Co. v. United States, 147 F.2d 93, 111 (6th Cir. 1944), aff'd, 328 U.S. 781 [66 S.Ct. 1125, 90 L.Ed. 1575] (1946) ; United States v. Armour and Co., 214 F.Supp. 123, 124 (S.D.Cal.1963) ; United States v. Metropolitan Leather & Findings Ass'n, 82 F.Supp. 449, 453 (S.D.N.Y.1949) ; United States v. A. P. Woodson Co., supra.

"In addition, an indictment under the Sherman Act does not have to be detailed or evidentiary. American Tobacco Co. v. United States, *supra*, at 117; United States v. Minneapolis Elec. Contractors Ass'n, *supra* [99 F.Supp. 75] at 78. In the American Tobacco case, the Court of Appeals said at page 117:

'Any words which fairly import a concerted action for a conniving together to restrain trade, are sufficient to charge a conspiracy.'

"Since the *Socony-Vacuum* case, opinions which have upheld indictments under Section 1 of the Sherman Act on the basis of the price-fixing charges are legion. See, e. g., United States v. Detroit Sheet Metal & Roofing Contractors Ass'n, 116 F.Supp. 81, 86 (E.D.Mich.1953) ; United States v. Universal Milk Bottle Service, Inc., 85 F.Supp. 622 (S.D.Ohio 1949), aff'd, 188 F.2d 959 (6th Cir. 1951) ; United States v. Metropolitan Leather & Findings Ass'n, *supra*, at 452–453."

In United States v. Universal Milk Bottle Service, *supra*, Judge Nevin stated (85 F.Supp. p. 627):

"Price fixing is illegal per se. U. S. v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129. The fixing of prices as alleged in the indictment necessarily operates as a direct and substantial restraint on the interstate commerce herein involved and in the indictment referred to."

The government contends that the indictment does not merely restate the provisions of the statute which the defendants are charged with violating "but

specifies the particular restraint of trade which is the subject of the charged conspiracy. The defendants are clearly charged with a concerted action *to fix prices* of industrial chemicals in the Cincinnati area. Price fixing by concerted action is one of many illegal restraints of trade contemplated under Section 1 of the Sherman Act. Hence the indictment states a particular offense under the Act." (Government's brief at pages 4–5.)

In United States v. A. P. Woodson, 198 F.Supp. 579 (D.C.D.C.1951), an antitrust case, the Court found adequate an indictment substantially the same as the one involved in this case. A copy of the indictment is attached to the government's brief. Plaintiff focuses attention on the question presented in this case to note that the defendants contend that the *Russell* case made the *Woodson* case "bad law." We cannot agree with that contention. On the contrary, we do agree with the statement quoted above as to the sufficiency of the indictment in this case. For a post-*Russell* case involving the sufficiency of an antitrust indictment, see United States v. Johns-Manville Corporation, 213 F.Supp. 65 (D.C.Pa., 1962). For a pre-*Russell* case on the same subject in addition to *Woodson*, see the opinion of Judge Nevin in United States v. Universal Milk Bottle Service, 85 F.Supp. 622 (S.D.Ohio 1949).

■ To conclude, we are of the opinion that the indictment in this case passes muster since it sufficiently apprises the defendants of what they have to be prepared to meet and enables the Court to pass on the legal sufficiency of the indictment.

Accordingly the Court finds the motion is not well taken and it is therefore overruled.

### On Motion of Globe Chemical Co., Inc. to Dismiss Indictment

The defendant, Globe Chemical Company, filed a motion to dismiss the indictment for the reason that it is nonexistent, having been acquired by Ashland Oil and Refining Co., of Ashland, Kentucky, February 17, 1966.

■ This was argued orally and has been extensively briefed. The Court agrees with the position of the government, as stated in its memorandum in opposition to the motion. From this it is clear that Ohio statutory law provides for continued vitality of a corporation after dissolution, thus subjecting the dissolved corporation to federal criminal prosecution. Melrose Distillers v. United States, 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959). The United States Court of Appeals for the Sixth Circuit has held that the Ohio statute is within the rationale of the *Melrose* case. United States v. Carter, 311 F.2d 934, 945 (6 Cir., 1963). The Court finds the motion is not well taken and it is therefore denied.

### On Motion to Dismiss on Grounds of Immunity from Prosecution

On February 20, 1969 the defendant, James R. Harrington, filed a motion to dismiss the indictment on the grounds that he was immune from prosecution and when interviewed in 1966 he was not given the *Miranda* warning.

This was argued orally and briefed and consideration has been given to the arguments for and against the motion.

■ Such consideration has led to the conclusion that the motion should be overruled, without prejudice to the right of the defendant Harrington to later file a motion to suppress evidence on the grounds that his constitutional rights were allegedly violated when he was interrogated by attorneys of the Department of Justice Antitrust Division. We have been cited to no authority and have found none which holds that such a violation is grounds for dismissal of an indictment. In the view of the Court it would therefore be inappropriate to discuss the authorities bearing on the ap-

plicability of *Miranda* to the situation which exists in this case.

As to the second ground of the defendant's motion, namely, that he is immune from prosecution under 15 U.S.C. Sections 32 and 33, these provide as follows:

"Immunity of Witness—No person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under sections 1–7 of this title and all Acts amendatory thereof or supplemental thereto, and sections 8–11 of this title: Provided, That no person so testifying shall be exempt from prosecution or punishment for perjury committed in so testifying. Feb. 25, 1903, c. 755, § 1, 32 Stat. 904." 15 U.S.C. Section 32.

"Immunity extended to natural persons only—Under the immunity provisions in section 32 of this title, immunity shall extend only to a natural person who, in obedience to a subpoena, gives testimony under oath or produces evidence, documentary or otherwise, under oath. June 30, 1906, c. 3920, 34 Stat. 798." 15 U.S.C. Section 33.

In connection with the grand jury proceedings which led up to the indictment in this case two subpoenas duces tecum were issued to the corporate defendant, Herbert Chemical. One was returnable October 24, 1966 and the other May 4, 1967. On each occasion the relevant corporate documents were submitted to the grand jury by the defendant, Mr. Harrington, President of Herbert Chemical. In other words he was not subpoenaed personally, but responded to the subpoenas duces tecum directed to the corporation of which he was president. The testimony given by Harrington related solely to identifying his position with Herbert Chemical and an identification and production of the corporate documents submitted by Herbert Chemical in response to the subpoenas duces tecum.

In response to his request the Court ordered a transcript of Mr. Harrington's testimony made available to him and a transcript has also been made available to the Court, and will be attached hereto under seal.

In the light of such transcript the Court agrees with the government's position that in effect the defendant contends that the government attorneys should have refused to accept the delivery of the documents from Harrington, and that failure to do so was a grant by them of immunity to the defendant Harrington. Harrington was not questioned about any transaction under investigation.

The Supreme Court has elucidated the reasons why a person subpoenaed for grand jury in his representative capacity even of an unincorporated association, much less a corporation, cannot claim constitutional immunity. United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944).

As to the statute under which the defendant Harrington claims immunity the Court said, in United States v. Monia, 317 U.S. 424, at 429, 63 S.Ct. 409, at 411, 87 L.Ed. 376 (1943), as follows:

"It is evident that Congress, by the earlier legislation, had opened the door to a practice whereby the Government might be trapped into conferring unintended immunity by witnesses voluntering to testify. The amendment was thought, as the Congressional Record demonstrates, to be sufficient to protect the Government's interest by preventing immunity unless the prosecuting officer, or other Government official concerned, should compel the witness' attendance by subpoena and have him sworn."

■ As we read this and the other cases bearing on the question raised by the defendant's contention immunity is not conferred to a witness who appears in response to a subpoena duces tecum to a

**548**

corporation if he only identifies documents and does not testify substantially with the transactions being investigated. See Hike v. United States, 227 U.S. 131, 142–143, 33 S.Ct. 226, 57 L.Ed. 450 (1913); United States v. Greater Kansas City Retail Coal Merchants Ass'n, 85 F.Supp. 503, 513–514 (W.D.Mo., 1949); United States v. American Radiator & Standard Sanitary Corp., 278 F.Supp. 608, 615 (W.D.Pa., 1967); and though they involve officers appearing in response to a subpoena duces tecum—but who were not placed under oath, United States v. Maine Lobster-Men's Ass'n, 160 F.Supp. 115, 118 (D.Me., 1957); and United States v. Owens-Corning Fiberglas Corp., 271 F.Supp. 561, 562, 569 (N.D.Cal., 1967).

We cannot agree with the position of the defendant that under the test enunciated in United States v. White, *supra*, the subpoena duces tecum directed to the Herbert Chemical Company should be considered to be directed to James R. Harrington because Herbert Chemical Company may have been a closely held corporation.

We have examined the case relied on by the defendant in support of his claim for immunity (memorandum of points and authorities, etc., page 2) and do not find them applicable or helpful. In United States v. Chas. A. Pfizer & Co., 245 F.Supp. 801 (S.D.N.Y., 1965) it does not appear that the defendants claiming immunity were not subpoenaed individually (808). Furthermore, the Court found they testified substantially in connection with the transactions under investigation (809). The other two cases cited by the defendants seem to pertain to the proposition that the defendant does not have to claim the privilege in order to assert it and seem to be cases where the defendants were subpoenaed personally. United States v. American Meat Institute, 47 F.Supp. 482 (N.D.Ill.1942); United States v. Molasky, 118 F.2d 128 (7 Cir., 1941), rev'd on other grounds, 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383.