**UNITED STATES of America**

v.

**James J. TEDESCO and Thomas J. Gillen, Defendants.**

**Crim. Nos. 77–72–1, 77–72–2.**

United States District Court, M. D. Pennsylvania.

Dec. 7, 1977.

Warren Marcus, Trial Atty., Philadelphia, Pa., for plaintiff.

Raymond W. Bergan, Washington, D. C., Bernard J. Brown, Carbondale, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

On June 2, 1977, indictments were returned against James J. Tedesco and Thomas J. Gillen by a grand jury sitting in Harrisburg, Pennsylvania. The indictments charged that the two Defendants, along with numerous coconspirators,[1] engaged in a continuing combination and conspiracy in unreasonable[2] restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, as amended prior to December 21, 1974, 15 U.S.C. § 1.[3]

It is alleged that the combination and conspiracy began as early as 1961, the exact date being unknown to the grand jurors, and continued through November of 1974,[4]

---

1. The indictment names six coal companies and three individuals as unindicted coconspirators. The bill of particulars filed by the Government, paragraph one, names seven additional coal companies and twelve more individuals as unindicted coconspirators known to the Government.

2. The Government's bill of particulars states that the term "unreasonable" refers to the per se unreasonable restraint of price fixing charged as the term of the conspiracy.

3. Changes were made in Section 1 of the Sherman Act, 15 U.S.C. § 1, effective December 21, 1974, Pub.L. 93–528, § 3, 88 Stat. 1708, which made a violation a felony punishable by a fine not exceeding one hundred thousand dollars or by imprisonment not exceeding three years for a person other than a corporation. The Defendants in this case have been indicted for alleged violations which occurred before the 1974 amendment, and therefore are charged with a misdemeanor, punishable upon conviction by fine not exceeding fifty thousand dollars or by imprisonment not exceeding one year.

4. The Government's bill of particulars, paragraph 2, states that James J. Tedesco participated in the conspiracy from "at least as early as 1961 through November 1974," and that Thomas J. Gillen participated in the conspiracy from "at least as early as 1966 through November 1973."

consisting of a continuing agreement,[5] understanding and concert of action among the Defendants and unindicted coconspirators to fix, stabilize, and maintain the prices of anthracite coal, with the Defendants and coconspirators doing those things which they combined and conspired to do. The Government's bill of particulars, paragraph three, states that the conspiracy alleged in the indictment concerned the prices of anthracite coal which was offered for sale or sold to customers located in the states of Pennsylvania, New York, New Jersey, Massachusetts, Maryland and Ohio.

The indictment states that the combination and conspiracy had the effects, among others, of fixing, stabilizing and maintaining prices for anthracite coal at artificial and noncompetitive levels,[6] of depriving customers of free and open competition in the purchase of anthracite coal, and of restraining competition in the sale of anthracite coal.

Before the Court at this time are numerous pretrial motions. Both Defendants have filed motions to dismiss the indictment; for discovery and disclosure of exculpatory material; for bills of particulars; and for severance. These motions will be discussed seriatim.

## MOTIONS TO DISMISS THE INDICTMENT

### SPECIFICITY OF THE CHARGE

The Defendants have challenged the indictment as being impermissibly vague and for failing to state facts sufficient to constitute an offense against the United States. For the reasons set forth below we find the indictment is sufficiently specific and states facts which constitute a violation of the Sherman Act, 15 U.S.C. § 1.

An indictment must be sufficiently specific to apprise the Defendants of the charges against them so that they may prepare an adequate defense, and must also be specific enough to avoid the possibility of the Defendants being placed in double jeopardy. *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Federal Rule of Criminal Procedure 7(c) requires that an indictment be a "plain, concise and definite written statement of the essential facts constituting the offense charged."

■■■ The essential elements of a Sherman Act indictment are the time, place, manner, means and effect of the alleged violation. *United States v. A. P. Woodson Co.*, 198 F.Supp. 579 (D.D.C.1961); *United States v. Maine Lobstermen's Association*, 160 F.Supp. 115 (D.Me.1957); *United States v. Greater Kansas City Retail Coal Merchants' Association*, 85 F.Supp. 503 (W.D. Mo.1949). Overt acts need not be alleged in a Sherman Act conspiracy indictment, for it is the conspiracy itself which is the crime. *Nash v. United States*, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913); *United States v. Globe Chemical Co.*, 311 F.Supp. 535 (S.D.Ohio 1969); *United States v. A. P. Woodson Co., supra.*

The indictment in the present case is comprised of nine paragraphs, in a manner quite similar to the indictments upheld in *United States v. Globe Chemical Co., supra*, and *United States v. A. P. Woodson Co., supra*. Paragraph one describes the Defendants, paragraph two names a number of unindicted coconspirators, paragraphs three and four define the anthracite coal industry and its role in interstate trade and commerce, paragraphs five, six, and seven set out the combination and conspiracy charged, paragraph eight lists the effects of the alleged combination and conspiracy, and paragraph nine deals with jurisdiction and venue.

---

**5.** According to the Government, the "agreement" which is alleged in paragraph 6 of the indictment was oral but evidenced in part by written or printed material. Government's bill of particulars, paragraph 4.

**6.** The phrase "artificial and non-competitive levels" as used in paragraph eight of the indictment means price levels by agreement, understanding or concert of action among competitors rather than price levels arrived at through free and open competition. Government's bill of particulars, paragraph five.

■ The element of time is found in paragraph five of the indictments, and states that the offense began as early as 1961 and continued through November of 1974, the exact date of beginning being unknown to the grand jurors. This is a sufficiently definite statement as to time. *Frankfort Distilleries, Inc. v. United States*, 144 F.2d 824, 831 (10th Cir. 1944), *rev'd in part on other grounds*, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 564 (1945); *United States v. Johns-Manville*, 213 F.Supp. 65 (E.D.Pa. 1962).

■ The geographic area where the conspiracy occurred is stated sufficiently in paragraph nine of the indictment which alleges that the conspiracy took place in part, within the Middle District of Pennsylvania. *Frankfort Distilleries v. United States, supra*, at 831; *United States v. A. P. Woodson Company, supra* ; See, *United States v. Johns-Manville, supra.*

It is the description of the manner and means of the conspiracy which the Defendants have attacked most vigorously. The indictment provides in paragraphs five, six and seven, under the heading "OFFENSE CHARGED" that:

"5. Beginning at least as early as 1961, the exact date being unknown to the grand jurors, and continuing thereafter through November 1974, the Defendants and coconspirators engaged in a continuing combination and conspiracy in unreasonable restraint of the aforesaid interstate trade and commerce in violation of Section 1 of the Sherman Act, as amended to December 21, 1974 (15 U.S.C. § 1).

6. The aforesaid combination and conspiracy consisted of a continuing agreement understanding, and concert of action among the defendants and coconspirators to fix, stabilize, and maintain the prices of anthracite coal.

7. In formulating and effectuating the aforesaid combination and conspiracy, the defendants and coconspirators did those things which they combined and conspired to do."

■ An agreement to fix, stabilize and maintain prices is "per se" an unreasonable restraint of trade under the Sherman Act, 15 U.S.C. § 1. *United States v. Socony Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Trenton Potteries Co.*, 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 (1927). The indictments do not merely restate the provision of the statute as alleged by the Defendants, but specify the particular restraint of trade which is the subject of the charged conspiracy. The Defendants are charged with a conspiracy to fix, stabilize and maintain the prices of anthracite coal, an illegal restraint of trade under the Sherman Act, 15 U.S.C. § 1. *United States v. Greater Kansas City Retail Coal Merchants' Association*, 85 F.Supp. 503 (W.D.Mo.1949).

■ It is true that the indictment in this case is not a model of specificity, but it is *specific enough* to withstand a motion to dismiss. An indictment under the Sherman Act does not have to be detailed or evidentiary. The gist of a conspiracy charge is agreement rather than action, and the agreement is usually established by a course of dealing or pattern of conduct and the reasonable inferences to be drawn therefrom. *United States v. United States Steel Corporation*, 233 F.Supp. 148, 152 (S.D.N.Y. 1964).

Defendants, while citing no case in which an indictment under Section 1 of the Sherman Act, 15 U.S.C. § 1, was held insufficient, have pointed to a number of cases in which indictments containing more factual averments than are in the present indictment withstood challenges. By so doing they attempt to substitute the factual specificity found in those cases for minimal requirements. In particular the Defendants point to *United States v. Johns-Manville*, 213 F.Supp. 65 (E.D.Pa.1962), *United States v. United States Steel Corp.*, 233 F.Supp. 148 (S.D.N.Y.1964) and *United States v. Braniff Airways, Inc.*, 428 F.Supp. 579 (W.D.Tex.1977). The Government relies mainly on *United States v. A. P. Woodson Co.*, 198 F.Supp. 579 (D.D.C.1961), a case with an indictment nearly identical to the

one in this case except that it concerned building materials. They also point to *United States v. Maine Lobstermen's Association,* 160 F.Supp. 115 (D.Me.1957) and *United States v. Greater Kansas City Retail Coal Merchants' Association,* 85 F.Supp. 503, 508 (W.D.Mo.1949).

The *Braniff Airways* case, although disapproving of an indictment, did not decide its validity and is therefore distinguishable.

The indictments in *Johns-Manville* and in *United States Steel* were both more specific in alleging terms of the agreement and meetings at which terms were agreed on. There is some question, however, as to whether such averments are necessary in the indictment. The indictment in the *A. P. Woodson* case was upheld even though it stated the conspiracy in more general terms. We believe the *A. P. Woodson* case establishes a minimum standard which the indictment in the present case meets. To the same effect, relying on *A. P. Woodson,* is *United States v. Globe Chemical Co.,* 311 F.Supp. 535 (D.Ohio 1969). Also see, *United States v. Universal Milk Bottle Service,* 85 F.Supp. 622 (S.D.Ohio 1949).

Because Defendants place great reliance on *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), we should point out that the situation in that case differs from the one presently before this Court. In *Russell,* the indictments charged that witnesses before a Congressional subcommittee had violated 2 U.S.C. § 192 in refusing to answer questions which were "pertinent to the questions then under inquiry" by the subcommittee, without specifying the precise subject under inquiry at the time of the alleged offense. The Supreme Court recognized that the core of criminality under 2 U.S.C. § 192 is the pertinency to the subject under inquiry of the questions which the Defendant refused to answer, and so the Supreme Court held there was insufficient notice of the precise charges, and inadequate assurance that the grand jury had actually considered and determined the pertinency of the questions, given the state of the indictment. This was a much more serious defect than any appearing in the present indictment.

Finally, we note that the effects of the conspiracy are adequately stated in paragraph eight of the indictment.[7]

Although we hold the indictment sufficient, in order to help the Defendants prepare their defense, the Court will require further particulars from the Government as to the terms of the alleged agreement. The Defendants are entitled to know more specifically by what manner and means they are alleged to have fixed prices.

## SIGNATURES OF THE GOVERNMENT ATTORNEYS

Both Defendants moved to dismiss the indictment on the ground that it was not signed by an attorney authorized to act for the United States. Defendant Gillen has briefed the matter while Defendant Tedesco has not.

The Gillen brief states that the indictment does not contain the signature of the United States Attorney for the Middle District of Pennsylvania, or the signature of any of his assistants, all of whom are persons charged with the duty to prosecute offenses in the district.

■ It appears from the exhibits attached to the Government's brief that at least three attorneys who signed the indictment were special attorneys operating under letters of authorization from the United States Department of Justice and they were therefore "authorized assistants" of the Attorney General for purposes of Rule 7(c) of the Federal Rules of Criminal Procedure. *Little v. United States,* 524 F.2d 335

---

7. The indictment alleges that the conspiracy had the following effects:

(a) Prices for anthracite coal were fixed, stabilized, and maintained at artificial and non-competitive levels;

(b) Customers have been deprived of free and open competition in the purchase of anthracite coal; and

(c) Competition in the sale of anthracite coal has been restrained.

(8th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 326 (1976).[8]

Federal Rule of Criminal Procedure 7(c)(1) requires the indictment to be signed by "the attorney for the government." Federal Rule of Criminal Procedure 54(c) provides that the term "attorney for the government" as used in the Federal Rules of Criminal Procedure, means *inter alia,* an authorized assistant of the Attorney General. The statutory basis for granting such authorizations is set forth in 28 U.S.C. § 515(a).[9] The power to appoint special attorneys to conduct any kind of legal proceeding, including grand jury proceedings may be delegated by the Attorney General to another "officer" of the Department of Justice. *United States v. DiGirlomo*, 520 F.2d 372 (8th Cir. 1975), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407.

When acting pursuant to such authorization, attorneys for the Antitrust Division have the same authority as the United States Attorney for that district. *United States v. Morton Salt*, 216 F.Supp. 250, 255 (D.Minn.1962), *aff'd per curiam,* 382 U.S. 44, 86 S.Ct. 181, 15 L.Ed.2d 36 (1965); *United States v. Sheffield Farms Co.*, 43 F.Supp. 1 (S.D.N.Y.1942). Therefore, we find Defendant Gillen's argument that the United States Attorney for the Middle District of Pennsylvania or one of his assistants must sign the indictment without merit.

## PRE–SIGNING OF PROPOSED INDICTMENT BY GOVERNMENT ATTORNEYS

Both Defendants have objected to the indictment based on the fact that the government attorneys may have signed the proposed indictment before it was presented to the grand jury for its consideration. They argue that pre-signing of an indictment by government attorneys is improperly suggestive and violates the independence and secrecy of the grand jury deliberations.

Although the contention appears to have some merit, Defendants cite no case, nor can we find one, that so holds. There is at least one case which specifically holds that signature by the prosecutor prior to consideration by the grand jury is not fatal to the indictment. *United States v. Levine*, 457 F.2d 1186 (10th Cir. 1972). In the absence of some additional evidence that the prosecutors actually exerted undue influence on the grand jury, the fact that their signatures may have been affixed to the indictment before, rather than after the grand jury's consideration is not significant enough to require dismissal of the indictment.

The Government has stated in its brief that the presigned indictment was not presented to the grand jury prior to the vote to indict. They contend that while the indictment was presigned by attorneys for the Government, an unsigned copy of the proposed indictment was given to the grand jury prior to its deliberations, and only after the grand jury had voted a true bill was the Foreman shown the signed original.

The Government should submit affidavits to this effect in order to place these facts on the record.

## PREJUDICIAL DELAY

Defendants contend that the indictments should be dismissed because of prejudicial delay by the Government in indicting the

---

**8.** Copies of letters of authorization granted to Warren Marcus, Roger L. Currier, and Donald C. Klawiter and signed by Thomas E. Kauper, Assistant Attorney General, Antitrust Division of the United States Department of Justice, are attached as exhibits to the "Memorandum of the United States in Opposition to Defendants' Motions to Dismiss the Indictment." All three attorneys signed the indictment.

**9.** 28 U.S.C. § 515(a) provides:
   "The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought."

Defendants. The Defendants have failed to point to any prejudice or period of delay either in their motions or in their briefs, and therefore the indictment will not be dismissed on this ground.

## SUFFICIENCY OF EVIDENCE PRESENTED TO THE GRAND JURY

Both Defendants have moved to dismiss the indictments on the ground that evidence presented to the grand jury was legally insufficient and incompetent to warrant· the return of the indictments. Defendant Tedesco adds that the indictment against him should be dismissed because the Government's use of such evidence before the grand jury unfairly manipulated the grand jury and deprived it of its independence.

Neither Defendant has briefed this question. Both have been granted access to all of the grand jury transcripts and all of the documents subpoenaed by the grand jury, yet have not supported these theories for dismissal of the indictments. Therefore, the indictments will not be dismissed on these grounds.

## BILL OF PARTICULARS

██ Defendants Gillen and Tedesco have both filed motions for a bill of particulars. As previously stated, the Government has filed a voluntary bill of particulars with some of the items requested by the Defendants. Without addressing each of the Defendants' remaining requests separately, we point out that the purpose of a bill of particulars is to obtain a statement of the charges that is sufficiently specific to allow Defendants to prepare an adequate defense, avoid prejudicial surprise at trial, and not subject themselves to double jeopardy. It is not a means of compelling disclosure of every detail of the preparation and theory of the Government's case. See generally, 1 Wright, Federal Practice and Procedure, § 129; *United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1972).

██ We feel that the indictment is sufficiently specific to define the offense charged and preclude a second prosecution for the same acts. The Defendants might, however, be hampered in the preparation of their defense by the fact that the indictment, while stating the essential elements of an offense under 15 U.S.C. § 1, fails to adequately allege the manner and means by which prices are alleged to have been fixed, and as previously stated more specificity will here be required.

We suspect that Defendants already have a good idea of what the Government will present at trial as the Defendants have been provided with all grand jury testimony relevant to the indictments and all documents subpoenaed by the grand jury or submitted voluntarily to the Government during its investigation. We note also that the Government will be providing the Defendants a list of proposed witnesses and premarked trial exhibits. It is not the Court's desire to confine too narrowly the Government's presentation of its case, however the following particulars in relation to the substance of the agreement or combination will be required:

1. State whether the alleged price fixing conspiracy included an agreement among competitors to charge the same or similar prices.

2. State whether the alleged price fixing conspiracy included an agreement not to reduce prices without prior notification of competitors.

3. State whether the alleged price fixing conspiracy included an agreement not to raise prices without prior notification of competitors.

4. State whether the alleged price fixing conspiracy included an agreement to maintain specified price differentials among different quantities, types or sizes of coal.

5. State whether the alleged price fixing conspiracy included an agreement to charge prices on a geographical basis.

6. State whether the alleged price fixing conspiracy included an agreement involving collusion in bidding.

7. State whether all grades and sizes of coal were included in the alleged price fix-

ing conspiracy, and if only some were, state which ones.

## DISCOVERY

On July 25, 1977, both Defendants filed extensive requests for pre-trial discovery. It appears that the Government has complied with a substantial number of those requests. Now Defendants have filed on October 25, 1977, a "Memorandum in Support of Defendants' Joint Motion for Discovery and Inspection," outlining those items which are still the subject of dispute. These requests involve information relating to a chronology and description of grand jury events; schedules for the production of witness and trial exhibit lists; and notes and memoranda of interviews with prospective witnesses.[10]

▩ Defendants request the information concerning the grand jury in relation to their motions to dismiss the indictment on the ground that the secrecy and independence of the grand jury was violated because the Government presented the grand jury with a proposed indictment which had already been presigned by the attorneys for the Government. As we have already rejected the Defendants motion to dismiss the indictment, on this ground, we find that the Defendants have shown no

compelling need for this information, and the request will be denied.

The grand jury information could possibly have relevance to Defendant Gillen's motion to dismiss the indictment because "The evidence presented to the grand jury was legally insufficient and incompetent to warrant the return of the indictment," as well as Defendant Tedesco's motion to dismiss the indictment because the "Evidence presented to the grand jury was legally insufficient and incompetent to warrant the return of the indictment by the grand jury; and, the Government's use of such evidence before the grand jury unfairly manipulated the grand jury and deprived it of its independence." Defendants carry a heavy burden to establish these contentions, but have pointed to nothing specific to support these allegations and have not briefed this matter, beyond those arguments presented relevant to the alleged pre-signing. A strong presumption attaches to the regularity of grand jury proceedings which may not be disturbed absent a clear showing by the Defendants of impropriety. See, *In re Grand Jury Proceedings*, 486 F.2d 85 (3d Cir. 1973). Therefore, these assertions will not serve as a justification for ordering production of the grand jury material. It should be noted in conjunction with this

---

**10.** Set forth below is the text of the Defendants' remaining requests:

"<u>Item 6.</u> A chronology of events concerning the presentation to the grand jury and the return by the grand jury of this indictment, which chronology is to include the place, time and date of (a) the signing of the indictment by all signatories thereto, and an identification of all those who actually were signatories thereto, (b) the presenting of the indictment to the grand jury, and (c) the return of the indictment by the grand jury.

<u>Item 7.</u> An explanation of the manner in which the indictment was actually presented to the grand jury by the prosecuting attorneys which explanation is to include but not be limited to information revealing: (a) whether the indictment was read to the grand jury, (b) whether the grand jurors read the indictment, (c) whether the indictment was signed at the time of

presentation and, if so, where and by whom, (d) whether all of the testimony presented to the grand jury was recorded, and (e) whether the transcripts of such testimony, if recorded, was made available to the grand jurors."

<u>Item 11.</u> All other books, papers, documents, photographs, or tangible objects that the government intends to offer into evidence in this case.

<u>Item 17.</u> The names and addresses of all other prospective witnesses, including co-conspirators, whom the government intends to call in the prosecution of this case, indicating which of said witnesses are unindicted co-conspirators.

<u>Item 20.</u> All written or recorded statements of all persons, including unindicted co-conspirators, whom the government intends to call as witnesses in the prosecution of this case."

matter that the Government has already produced extensive grand jury transcripts and minutes to the Defendants.

Defendants object that they are not being provided with the Government's premarked exhibits and a list of the Government's trial witnesses sufficiently in advance of trial. The Government has agreed to premark its exhibits and deliver them to the Defendants twenty days prior to trial, and to submit a witness list for the Government's case in chief ten days prior to trial. Defendants cite no authority in support of their expedited disclosure requests, and we find the Government's proposal is reasonable.

The Defendants have also requested notes and memoranda of interviews with prospective witnesses. The Government has stated that it will provide all material required pursuant to Federal Rule of Criminal Procedure 16(a), the Jencks Act, 18 U.S.C. § 3500, and all exculpatory material required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defendants point to no duty with which the Government has failed to comply in this regard. If Defendants seek specific items of material evidence not yet released, they are free to request it from the Government, and if necessary move the Court to compel disclosure. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

## MOTIONS FOR SEVERANCE

Defendant Tedesco filed a motion for severance pursuant to Federal Rule of Criminal Procedure 14, on July 25, 1977. No reason for severance was stated in the motion and Defendant Tedesco has not briefed this motion. As no cause for prejudice has been pointed to, Defendant Tedesco's motion for severance is denied.

Defendant Gillen has submitted a motion for severance supported by an affidavit and memorandum. He states in his affidavit that he left the anthracite coal industry in November of 1973, and has not been in or associated with the anthracite coal industry since November 26, 1973, whereas the other named Defendant, James J. Tedesco, is still actively engaged in the production and sale of anthracite coal. Defendant Gillen further states that subsequent to his leaving the anthracite coal industry prices were increased very substantially, and he believes there will be much evidence offered by the United States at trial showing these increases, all of which he claims is not admissible against him, but which may be admissible against the other Defendant, thus severely prejudicing him and denying him his right to a fair and impartial trial.

Accepting for the sake of argument that the evidence against Defendant Tedesco may be more extensive and damaging, it has been recognized that a defendant is not entitled to a severance for this reason alone. *United States v. Dansker*, 537 F.2d 40, 62 (3rd Cir. 1976); *United States v. Somers*, 496 F.2d 723, 730 (3rd Cir. 1974). In determining whether disparate proofs require severance, the proper inquiry is whether the evidence is such that the jury cannot be expected to compartmentalize it and then consider it for its proper purposes. *United States v. Dansker, supra.*

Defendant cites *United States v. Kirk*, 534 F.2d 1262 (8th Cir. 1976), to the effect that severance should be allowed upon a showing of real prejudice to an individual defendant. This was a case involving conspiracy among multiple defendants to purchase and distribute heroin in which the United States Appeals Court for the Eighth Circuit upheld the decision of the trial judge to not allow a severance. The case points out that the question of whether to sever is within the sound discretion of the trial judge, and persons in a conspiracy should generally be tried together.

We believe that Defendant Gillen will not be unduly prejudiced by a joint trial and the request for a severance is denied.